NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0403n.06

No. 09-5953

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jun 20, 2011*
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

LARRY BRIGGS,

     Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

_____/

Before:     MARTIN and SUTTON, Circuit Judges; GRAHAM, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge. Kentucky State Police twice received anonymous tips that Larry Briggs was selling cocaine at his house, twice organized controlled drug buys between confidential informants and Briggs, and twice arrested him following the set-ups. Briggs was convicted of possession of cocaine, possession with intent to distribute cocaine, and being a felon in possession of a firearm. The district court sentenced him to the statutory-minimum sentence available for a felon in possession who qualifies as an armed career criminal: fifteen years. Briggs now appeals his conviction and sentence on multiple grounds. For the following reasons, we **AFFIRM** the judgment of the district court.

_____

[*] The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Briggs lived with his grandfather in a house in Franklin, Kentucky. A woman named Lisa Spencer anonymously contacted Kentucky State Police and told them that Briggs was selling crack cocaine at the house. The police began monitoring the house and saw a man named Tim Goosetree arrive at the house and stay only momentarily before leaving. Believing that Goosetree may have just purchased drugs from Briggs, police stopped Goosetree for an expired license plate. Goosetree had, in fact, just bought cocaine from Briggs and became a confidential informant for the police.

On December 15, 2006, police had Goosetree phone Briggs to arrange a drug purchase and recorded the call. Goosetree then drove to Briggs's house, completed the purchase with cash that was supplied and photocopied by police, and turned the cocaine that he bought from Briggs over to police.

Detective Brad Harper obtained a warrant to arrest Briggs and search his home. Police arrested Briggs away from his home and found on him $1,523, which included some of the money given to Goosetree by police to use in the controlled buy. Police then took Briggs to his home where other officers had simultaneously executed the search warrant. They found a loaded .32 caliber handgun, given to him by his daughter, under the mattress in Briggs's bedroom and a small amount of cocaine and marijuana in the purse of Briggs's estranged wife. Additionally, after Briggs had been sitting in a police cruiser, police found a baggie of cocaine where he had been sitting.

Briggs was eventually released from custody on bond, but police received a tip four months later that he was again selling cocaine. Police had another confidential informant, Angie Evans, phone Briggs on the night of April 26, 2007 and request five pieces of crack cocaine. Briggs

responded that he did not want to leave the house that late at night. Evans called Briggs again the next day and Briggs agreed to bring her five pieces of crack. Police recorded these two calls as well.

About eighteen minutes later, police stopped Briggs in his car near Evans's home. Police asked him to exit the car, told him to lie prone on the ground, and placed him in handcuffs. Detective Harper arrived at the scene and began searching Briggs. Believing that Briggs might have something in his mouth, Detective Harper asked him to open his mouth. Briggs would only barely open his mouth, so Detective Harper told him to stick out his tongue. At this point, Detective Harper believed that Briggs looked as though he was trying to swallow something. He bent Briggs over and told him to spit out whatever was in his mouth. Briggs spit out a baggie containing five individually-wrapped pieces of crack cocaine.

At trial, the United States introduced into evidence the recorded calls made by Goosetree and Evans to Briggs. Goosetree had died before trial and Evans could not be located. The court admonished the jury that the statements in the recordings made by Goosetree and Evans could not be considered for the truth of the matters asserted, only for contextual purposes. The jury convicted Briggs of possession with intent to distribute cocaine, distribution of cocaine, and being a felon in possession of a firearm.

At sentencing, the district court applied the career-offender enhancement pursuant to U.S.S.G. § 4B1.1, giving Briggs a total offense level of thirty-four. Considering his criminal history category of VI, Briggs's sentencing range was twenty-one years and ten months to twenty-seven years and three months. Additionally, the district court determined that Briggs qualified as an armed career criminal pursuant to 18 U.S.C. § 924(e) because he had three prior convictions that were

violent felonies or serious drug offenses. That title carried a statutory-minimum sentence of fifteen years of imprisonment. The district court ultimately sentenced Briggs to the statutory minimum of fifteen years of imprisonment and six years of supervised release. Briggs now appeals.

## II. DISCUSSION

On appeal, Briggs asserts four claims. First, he challenges the introduction of the recorded phone conversations at trial as a violation of the Confrontation Clause. Second, he avers that the district court improperly admitted into evidence cocaine that he allegedly sold to Goosetree. Third, he argues that police violated the Fourth Amendment by unreasonably searching and seizing him, and that the district court erred in denying his motion to suppress evidence from the searches and seizures. Finally, Briggs challenges his sentence as procedurally and substantively unreasonable.

### A.      Confrontation Clause

Briggs was unable to cross-examine Goosetree and Evans about their statements on the recorded phone conversations, which he claims were testimonial, because they were unavailable to testify at trial. Briggs specifically challenges statements made by Goosetree that he and Briggs had "past involvement." Briggs does not identify any of Evans's statements about which he would have cross-examined her. He does not argue that admitting any of his own recorded statements was in error. "We review de novo claims that the admission of evidence violated the Confrontation Clause." *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) (citation omitted).

"[T]he Confrontation Clause bars the 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.'" *Johnson*, 581 F.3d at 325 (quoting *Crawford v. Washington*, 541 U.S. 36,

53-54 (2004)). However, the statement must be offered for the truth of the matter asserted in order to implicate the Confrontation Clause. *United States v. Deitz*, 577 F.3d 672, 683 (6th Cir. 2009) (citation omitted).

Admitting Goosetree's and Evans's statements did not violate the Confrontation Clause. Even if the statements were testimonial, they were not offered for the truth of the matters asserted. Rather, they were offered to give context to Briggs's statements. At trial, the district court instructed the jury that any statements made by Goosetree or Evans were hearsay, and they could be considered only for contextual purposes, not for the truth of any matter asserted. Accordingly, admitting Goosetree's and Evans's recorded statements did not implicate the Confrontation Clause and does not require reversal.

**B.**     **Chain of Custody of Evidence**

Part and parcel with his Confrontation Clause claim, Briggs conflates a claim that the district court improperly admitted into evidence cocaine that Goosetree purportedly bought from him during the controlled buy and forfeited to the police. Briggs asserts that the United States never established that the cocaine actually came from Briggs, and that it should not have been admitted because he could not confront Goosetree as to its source. Although Briggs includes this claim in the section of his brief concerning his Confrontation Clause claim, and he states that he would have confronted Goosetree as to the source of the cocaine if he could have cross-examined him, this claim can only be treated as an evidentiary challenge to the chain of custody of the cocaine. Importantly, this claim only concerns the cocaine from the controlled buy and not the cocaine Goosetree purchased before his cooperation with police.

We review evidentiary issues for abuse of discretion. *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (citation omitted). "'[A]n abuse of discretion is evident when the reviewing court is firmly convinced that . . . [a] district court . . . relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *Id.* (quoting *Ross v. Duggan*, 402 F.3d 575, 581 (6th Cir. 2004)).

Whether there has been a break in the chain of custody of evidence is a question for the jury. *Id.* at 525. A challenge to the chain of custody affects the weight of the evidence, not its admissibility. *Id.* "Physical evidence is admissible when the possibilities of misidentification or alteration are 'eliminated, not absolutely, but as a matter of reasonable probability.'" *Id.* (citation omitted). A defendant cannot render evidence inadmissible simply by raising the possibility of tampering, and when the defendant presents no evidence of tampering, "courts presume public officers have discharged their duties properly." *Id.* (citation omitted).

Here, the police provided testimony at trial regarding the chain of custody of the cocaine purchased by Goosetree from Briggs. Before the transaction, police searched Briggs and supplied him with a vehicle so that they knew he had no cocaine with him. Goosetree then proceeded to Briggs's home, made the purchase, and drove back to meet the police where he handed over the cocaine he bought from Briggs. Goosetree was under surveillance this entire time. On this testimony, the trial court admitted the cocaine as evidence.

Briggs has only raised the possibility of tampering and has provided no evidence that the crack supplied by Goosetree to police was not purchased from him. In *Allen*, we faced a similar chain-of-custody challenge where the defendant alleged that the crack presented at trial was not the

crack from the crime scene because it was in a different bag (an evidence bag) and had diminished in weight. *Id.* At trial, the United States presented evidence explaining the new evidence bag and the lesser weight. *Id.* We held that the district court did not abuse its discretion in admitting the evidence because the defendant had only raised the possibility of tampering and provided no evidence of tampering. *Id.*

Here, Briggs has alleged even less than the defendant in *Allen*. At least the defendant there pointed to reasons—differences in container and weight—why he believed that someone had tampered with the evidence. Briggs does not provide an alternate source of the evidence in his case. Neither does he provide evidence that contradicts the police testimony establishing chain of custody. Accordingly, the district court did not abuse its discretion in admitting the cocaine purchased by Goosetree into evidence.

## C.     Fourth Amendment

Before trial, Briggs filed a motion to suppress evidence obtained from his first arrest, the search of his home, and his second arrest. The district court denied the motion. When we review denials of motions to suppress, we review findings of fact for clear error and legal conclusions de novo. *United States v. Graham*, 483 F.3d 431, 435 (6th Cir. 2007). The facts are viewed in favor of the district court's conclusion. *Id.*

### 1.     First arrest and search of home

Police obtained a warrant to arrest Briggs and search his home after the controlled buy with Goosetree. Briggs argues that the warrant was not supported by probable cause because the affidavit supporting the application was based on only an unreliable informant, did not contain any

corroborating information, and did not establish a nexus between Briggs's home and evidence of a crime. He additionally claims that, because there was no probable cause, the officers who executed the warrant could not have done so in good faith. These claims fail.

The affidavit supporting the warrant application was based partially upon a tip from an anonymous informant (Spencer). She told police that Briggs was trafficking drugs through his house, that he kept a gun in his bedroom, and that drug purchasers would park down the street from Briggs's house in a parking lot before walking up to the house to buy drugs. In addition, following the anonymous tip, police observed multiple people park down the road from Briggs's home, walk to the house, and engage in what appeared to be drug deals with Briggs. Police followed the second man they observed, Goosetree, who admitted to buying cocaine from Briggs and gave police two baggies of cocaine that he bought from Briggs. Goosetree then engaged Briggs in the controlled buy while under police surveillance and recording, after which he gave police cocaine that he purchased from Briggs. Therefore, Briggs's claim that the affidavit was premised on only an unreliable informant is baseless. It contained much more. His claim that the affidavit lacked corroborating information is baseless for the same reasons.

Furthermore, the affidavit established a nexus between Briggs's home and criminal activity. In addition to the anonymous tip, the police surveillance of potential drug buys at Briggs's home, the information from Goosetree about purchasing drugs from Briggs at his home, and the controlled buy at Briggs's home all connected Briggs's suspected criminal activity to his home. This is sufficient to reasonably expect evidence of drug dealing to be located at Briggs's home. *Cf. United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) (finding that there was probable cause to believe

evidence of criminal activity would be found at defendant's home when defendant was engaged in drug trafficking); *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) ("[I]n the case of drug dealers, evidence is likely to be found where the dealers live . . . .").

Because Briggs's attacks upon the warrant fail, his claim that the officers could not have executed the warrant in good faith must fail as well. This argument is premised upon the warrant actually lacking probable cause, but Briggs has failed to establish this condition. Accordingly, the district court did not err in denying Briggs's motion in regard to his first arrest and the search of his home.

### 2. Second arrest

Police did not have a warrant when they stopped Briggs in his car following the phone call with Evans. Instead, they stopped him based on probable cause that he possessed drugs. Briggs claims that the police actually lacked probable cause, but this claim fails, too.

With Briggs's first arrest having occurred just four months earlier, police received a tip that Briggs was again dealing crack out of his house. Based on that tip, police set up the phone call with Evans. During that call, Briggs agreed to deliver five pieces of crack to Evans at her house. A short eighteen minutes later, police stopped Briggs in his car near Evans's house believing that he was taking crack to Evans.

In *United States v. Strickland*, 144 F.3d 412, 417 (6th Cir. 1998), we encountered a similar situation and held that police had probable cause to arrest the defendant without a warrant. There, police instructed an informant to arrange a controlled drug sale with the defendant. *Id.* at 414. The informant called the defendant in the presence of police and arranged a meeting at a specific time

and place. *Id.* The call was not recorded and it does not appear that the police could hear the defendant's voice on the phone. *Id.* The informant also told police that he and the defendant usually exchanged drugs and money inside a car when they engaged in drug sales. *Id.* At the time and location specified by the informant, police witnessed the defendant arrive and get inside the informant's car with the informant. *Id.* The defendant exited the car a couple minutes later and police arrested him. *Id.* Although the informant was wearing a recording device, police did not hear what was happening inside the car before they arrested the defendant. *Id.* We held that these circumstances gave the police probable cause even though the police "did not actually witness any illegality." *Id.* at 417.

Here, Briggs did not complete the sale like the defendant in *Strickland*. However, Evans arranged the drug sale with Briggs at the direction of the police. She asked for a specific amount of crack, which Briggs agreed to deliver to Evans at her home. This phone conversation was recorded and police listened to it. Furthermore, police knew that Briggs had sold crack in the past from their case with Goosetree. Police arrested Briggs in his car near Evans's house eighteen minutes after the call. Consequently, police had probable cause to stop and arrest Briggs even though they did not actually see him doing anything illegal.

Therefore, police permissibly searched Briggs when he was arrested. *Cf. Chimel v. California*, 395 U.S. 752, 762-63 (1969) ("[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."). Believing that Briggs had driven to Evans's house to deliver crack, and having arrested him on suspicion of dealing drugs, the police reasonably believed that Briggs might have

been carrying drugs or other evidence. Accordingly, the district court did not err in denying Briggs's motion in regard to his second arrest and the incidental search of his person.

**D.       Reasonableness of Sentence**

Briggs argues that the district court improperly sentenced him as an armed career criminal and a career offender, and that his fifteen-year sentence is substantively unreasonable for a crime of possessing one gram of crack cocaine. We review sentences for both procedural and substantive reasonableness and apply a deferential abuse-of-discretion standard. *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011) (citations omitted).

First, the district court correctly sentenced Briggs as an armed career criminal. According to section 924(e), a statutory-minimum sentence applies to felon-in-possession convictions when the defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." Briggs has one prior state conviction for manslaughter and two state convictions for drug trafficking. He argues that manslaughter does not qualify as a "violent felony." However, in the Sixth Circuit, manslaughter is a violent felony for purposes of section 924(e) when the state statute requires the defendant's actions to cause the victim's death. *United States v. Sanders*, 97 F.3d 856, 860-61 (6th Cir. 1996) (holding that the Ohio involuntary manslaughter statute is a violent felony for purposes of section 924(e) because it "requires that the offender engage in conduct which directly and proximately results in another's death"). The Kentucky manslaughter statute at the time of the underlying incident and Briggs's conviction stated that "[a] person is guilty of manslaughter in the second degree when . . . he

wantonly causes the death of another person." Ky. Rev. Stat. § 507.040(1) (1990-1991). Therefore, the district court properly counted Briggs's manslaughter conviction as a violent felony.

Briggs also argues that his two prior drug trafficking convictions are not "serious drugs offenses." However, the drug convictions were Kentucky Class C felonies, which we have held qualify as serious drug offenses for section 924(e) because they may carry a sentence of ten years of imprisonment. *United States v. Martin*, 526 F.3d 926, 940-41 (6th Cir. 2008); *see* 18 U.S.C. 924(e) (defining a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law"). Additionally, convictions are considered separate for purposes of section 924(e) as long as they were separate criminal episodes that are distinct in time, even if they were charged through a single indictment and convictions were obtained at the same time. *See United States v. Roach*, 958 F.2d 679, 683-84 (6th Cir. 1992). Briggs's drug trafficking convictions were for distinct incidents between which almost six months passed. Therefore, the convictions counted as two serious drug offenses, and Briggs had three prior convictions that qualified him as an armed career criminal.

Second, Briggs's claim that the district court improperly sentenced him as a career offender is irrelevant. The district court indeed applied the Guidelines section for a career offender, which increased Briggs's total offense level and sentencing range, but the district court ultimately sentenced Briggs to the statutory-minimum sentence for felons in possession; a sentence that was well below the otherwise applicable sentencing range. Even assuming that the district court improperly applied the career-offender enhancement, a district court's improper calculation of the otherwise applicable

sentencing range is harmless error when a defendant is sentenced to a statutory minimum. *See United States v. Langford*, 516 F.3d 205, 215-16 (3d Cir. 2008) (collecting cases). Briggs's sentence would be no lower if we held that the district court improperly applied the career-offender enhancement and remanded for resentencing. Because the district court sentenced Briggs to the statutory-minimum sentence, it did not render his sentence unreasonable by applying the career-offender enhancement to first calculate the otherwise applicable sentencing range.

Finally, Briggs's argument that his sentence is substantively unreasonable fails. Briggs does not advance a specific argument as to why his sentence is substantively unreasonable. Furthermore, he seems to ignore that he was convicted based on multiple controlled drug buys and his firearm possession. Although Briggs believes that he should have received a lesser sentence, a district court may sentence a defendant below a statutory minimum only if the United States moves for a downward departure according to 18 U.S.C. § 3553(e) or § 3553(f). *United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007). Here, the United States did not make such a motion and Briggs's sentence is as low as it could go. Accordingly, Briggs's statutory-minimum sentence is procedurally and substantively reasonable.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.