NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0027n.06

No. 13-5558

**FILED**
Jan 08, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ANTHONY GOSSETT,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

BEFORE:    SILER, CLAY, and GIBBONS, Circuit Judges.

**CLAY, Circuit Judge.** Defendant, Anthony Gossett, appeals from the district court's order denying his motion to suppress and the below-guidelines sentence imposed after a jury found him guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## BACKGROUND

### I.    Factual Background

On February 26, 2011, four officers with the Memphis Police Department went to the residence of Defendant's mother, Viola Nelson, to follow up on a complaint that drugs were being sold outside the home. As the officers approached the house, they saw two men, Defendant Anthony Gossett and Corey Pinson, smoking marijuana while seated in the trunk of a car parked outside. The lid of the trunk was open, and the officers also observed a bag of

marijuana placed in the trunk between the two men. The officers seized the bag of marijuana from the truck and arrested Defendant and Mr. Pinson.

After being arrested, Defendant told the officers that he lived at the residence with his mother. Once the officers explained that they were there because of a drug trafficking complaint, they asked Defendant for consent to search the residence. Defendant said, "[Y]'all can tear the place up for all I care, but you've got to check with my mom first."

Two of the officers went to the residence while the other two stayed with Defendant and Mr. Pinson. After knocking on the door, the officers were invited in by Defendant's mother, Ms. Nelson. They spoke with her for about ten minutes during which they asked whether they could search the residence and informed her that she had the right to refuse to give consent to the search. Eventually, Ms. Nelson orally gave the officers consent to search the residence, and also signed a written consent form agreeing to the same.

Ms. Nelson then led the officers through the house and directed them to Defendant's bedroom. The bedroom door was shut but unlocked. In the bedroom, the officers found a loaded revolver on the dresser as well as marijuana cigarettes. As the officers were walking out of the house, Defendant, who was not talking to anyone, saw them with the gun and proclaimed, "[T]hey went in my house and found my gun." At that point, the officers had not yet read Defendant his *Miranda* rights. Defendant's mother later signed a separate rights waiver form and stated that she knew nothing about the firearm.

## II. Procedural History

Defendant was indicted by a federal grand jury with being a felon in possession of a firearm. Before trial, Defendant's counsel filed a motion to suppress both the evidence seized at the house as well as Defendant's proclamation that the gun was his. At the suppression hearing,

Defendant's mother admitted that she let the officers into the house and allowed them to search her son's bedroom. She claimed that she let them in because she learned from "watching TV" that if she refused, they would come back later with dogs and "tear the house up." Defendant's mother also claimed that she only signed one form, after the officers already found the gun; however, upon seeing her signature on the consent to search form, she admitted signing two separate forms.

After the suppression hearing, the magistrate judge issued a report recommending that the motion to suppress be denied. He found the officers' testimony that Defendant's mother signed the consent form before they searched the house to be credible and that her consent to the search was valid and voluntarily given. The district court adopted the findings and conclusions of the magistrate judge and denied Defendant's motion to suppress.

The district court found that Defendant's mother did not exhibit any signs of duress or coercion and that she voluntarily brought the officers into her house. In addition, her belief that the officers could come back to the house with a dog was "a belief that she gained from television and not from the officers." The court also ruled that Defendant's statement about the gun was a "spontaneous utterance" that was not made in response to custodial interrogation. After the motion to suppress was denied, Defendant went to trial and was ultimately found guilty by the jury.

At sentencing, the Presentence Investigation Report ("PSR") recommended an advisory guideline range of 235 to 293 months. The government requested a sentence of 264 months. The district court, considering the nature and seriousness of the offense, as well as Defendant's personal history, rejected the government's recommendation and varied downward to the

statutory minimum of 180 months. Defendant now appeals both the denial of his motion to suppress and the length of the sentence imposed.

## DISCUSSION

### I. Motion to Suppress

#### A. Standard of Review

We review a district court's decision on a suppression motion for clear error as to factual findings and *de novo* as to conclusions of law. *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004). If the district court denies the motion to suppress, "we must view the evidence in the light most favorable to the government." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (internal quotation marks omitted). This Court may uphold the denial of a motion to suppress on any ground supported by the record. *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009).

Factual findings or credibility determinations by the district court are clearly erroneous only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted). "Whether consent to a search is voluntarily given is a question of fact." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998). Therefore, a "district court's finding of voluntary consent will be reversed only if clearly erroneous." *Id.* (citation omitted).

#### B. Analysis

##### 1. Consent to search

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

It is well-settled that an individual may waive her Fourth Amendment rights by consenting to a search. *Davis v. United States,* 328 U.S. 582, 593–94 (1946). Consent to a search "may be in the form of words, gesture, or conduct." *United States v. Young*, 318 F. App'x 407, 409 (6th Cir. 2009) (quoting *United States v. Griffin,* 530 F.2d 739, 742 (7th Cir. 1976)). In whatever form, consent has effect only if it is given freely and voluntarily. *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968). Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973).

The district court found that Defendant's mother did not exhibit any signs of duress or coercion and that she voluntarily brought the officers into her house. The district court thus concluded that the government's search of Defendant's living space was justified based on the valid and voluntary consent of his mother.

Defendant argues that although he lived at the residence and it was owned by his mother, he nonetheless had a privacy interest in his bedroom that was "separate . . . from his mother's privacy interest in the entire house." It is axiomatic that consent to search must come from someone authorized to give it. *United States v. Purcell*, 526 F.3d 953, 962 (6th Cir. 2008) (citation omitted). "[A] third-party can consent to a search of jointly occupied property, as long as the third-party has 'common authority' over the premises." *United States v. Moore*, 917 F.2d 215, 223 (6th Cir. 1990) (search of defendant's bedroom was lawful due to consent given by girlfriend).

In this case, Defendant's mother, as a co-tenant, had common authority over the entire residence. *See Pratt v. United States*, 214 F. App'x 532, 534–36 (6th Cir. 2007) (family members typically have authority over the entire family residence) (citing *United States v.*

*Clutter*, 914 F.2d 775, 777 (6th Cir. 1990)).  In addition, Defendant essentially conceded that his mother had authority over the entire residence when he told the officers they could "tear the place up for all I care, but you've got to check with my mom first."

Moreover, even if Defendant's mother did not have actual authority to give consent to search of Defendant's bedroom, both Defendant and his mother acted as though she did.  A "warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not."  *United States v. Hall*, 979 F.2d 77, 79 (6th Cir. 1992) (quoting *Illinois v. Rodriquez*, 497 U.S. 177, 179 (1990)).  "[T]he reasonableness of the government's decision to search is assessed by the objective standard of whether the facts available at the moment would warrant a person of reasonable caution in the belief that the consenting party had authority over the premises."  *Id.* (internal quotation marks omitted).

Just as in *Hall*, the officers here "acted with the understanding and belief" that Defendant's mother "had the authority to consent to the police entrance and search" of Defendant's bedroom. 979 F.2d at 79–80.  Defendant's mother testified that she "just carried [the officers] right on back" to her son's bedroom.  Since Defendant told the officers that consent to search any part of the house depended on his mother, he cannot now complain that they relied on his mother's consent to search his bedroom. *Cf. Georgia v. Randolph*, 547 U.S. 103, 121 (2006) (holding that a present and objecting co-tenant can trump a third party co-tenant's authority to consent).

The record shows that Defendant's mother invited the officers into the house, promptly gave verbal and written consent to search, and led the officers to Defendant's bedroom.  She did not object when the officers began their search.  There was absolutely no indication of any sort

of mental or physical impediment, or influence of medication, that would impair her ability to consent to a search. In addition, the district court found that Defendant's mother did not objectively appear to be under duress.

There was also no evidence presented that Defendant's mother was coerced to consent. A "defendant must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police." *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995). Specifically, "the defendant must establish that: '(1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was in fact, overborne as a result of the coercive police activity.'" *United States v. LeBlanc*, 45 F. App'x 393, 397 (6th Cir. 2002) (quoting *United States v. Rigsby*, 943 F.2d 631, 635 (6th Cir. 1991)). There was no evidence presented at the hearing that the officers had their guns drawn or threatened Ms. Nelson in any way. The entire process of encountering the officers and granting consent to search the bedroom lasted approximately ten minutes. Even though the officers were not required to do so, they told Defendant's mother that she had the right to refuse consent.

In conclusion, Defendant's mother demonstrated that she had authority to consent to a search of the entire residence. She took the officers directly to her son's bedroom, identified it as such, and did not object as the officers went in and searched the room. There was no indication Ms. Nelson was mentally or physically impaired, as well as no indication of duress or coercion by the officers. Furthermore, Defendant gave his mother authority over the residence via his statement to the officers. As a result, the district court's finding that the mother's consent to search Defendant's bedroom was valid and voluntarily given is not clearly erroneous.

### 2. Statement made following discovery of the gun

Defendant argues that his statement about the gun following its discovery by the police should have been suppressed either (1) because it was fruit of the poisonous tree, or (2) because it was given in response to interrogation or the functional equivalent of such questioning. His first argument fails because, since there was no illegal search, there could be no "poisonous tree" from which the statement could have derived. His second argument fails because, as the district court found, Defendant was not being interrogated when he spontaneously said the gun was his.

It is well-settled that statements volunteered by a defendant while in custody are not implicated by *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda* itself, the Supreme Court held that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* at 478. "[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *see also United States v. Montano*, 613 F.2d 147, 149 (6th Cir. 1980).

In *United States v. Murphy*, the defendant made statements while in custody in a police car without being questioned by any officers. 107 F.3d 1199, 1204–05 (6th Cir. 1997). Even though the defendant had not been provided *Miranda* warnings, this Court held that the statements were admissible because they were voluntarily made in the absence of any questioning. *Id.*

The case at hand presents a similar situation. Defendant saw the officers leave his house carrying his gun and simply blurted out that the gun was his. The district court found that Defendant presented no evidence at the hearing that would contradict the officers' testimony on

this point. Viewing the record in its entirety, in the light most favorable to the government, we conclude that it supports the district court's findings.

## II.     Sentencing Determination

### A.     Standard of Review

We review a district court's sentencing determination for reasonableness under a deferential abuse of discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). This reasonableness review involves two steps: (1) procedural and (2) substantive. *Id.* In performing this two-step review, "[t]he district court's interpretation of the advisory Guidelines is reviewed *de novo*, and its findings of fact are reviewed for clear error." *United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009).

This Court evaluates the procedural reasonableness of a sentence to "ensure that the district court did not commit significant procedural error, such as: 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). When reviewing a sentence for procedural reasonableness, "we must ensure that the district court correctly calculate[d] the applicable Guidelines range" because it is "the starting point and initial benchmark of its sentencing analysis." *Bolds,* 511 F.3d at 579 (internal quotation marks omitted).

We also assess the substantive reasonableness of the sentence. A sentence is substantively reasonable if it is "sufficient, but not greater than necessary" to achieve the sentencing goals identified by Congress. 18 U.S.C. § 3553(a); *see also United States v. Herrera-Zuniga*, 571 F.3d 568, 588 (6th Cir. 2009). A sentence will be found substantively unreasonable

if "the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Corp*, 668 F.3d 379, 386 (6th Cir. 2012) (internal quotation marks omitted).

### B. Analysis

Defendant was sentenced to 180 months of confinement—the statutory minimum pursuant to 18 U.S.C. § 924(e). The sentence is fifty-five months below the low-end of the advisory guideline range recommended in the PSR. Neither Defendant nor the government objected to the calculation in the PSR, but Defendant did ask the district court for a downward departure, which was denied.

Defendant claims his sentence is "excessive based n [*sic*] the circumstances." He does not make clear whether he believes his sentence is procedurally unreasonable, substantively unreasonable, or both. Indeed, he cites to nothing in the record and advances no concrete argument at all as to why his sentence is excessive.

We are of the opinion that the sentence imposed by the district court was procedurally reasonable. Neither party asserts that the district court improperly calculated the guidelines range and there is nothing in the record suggesting as much. Additionally, the district court acknowledged that the guidelines were not mandatory and that the court could vary from the calculated range. Before imposing the sentence, the court outlined the facts of the case and the facts of Defendant's personal and criminal history. None of the facts the court discussed were clearly erroneous. From the sentencing transcript, it is evident that the district court took "everything into account," including the 3553(a) factors when it determined the sentence. And finally, the court went to great lengths to explain the basis for the sentence imposed, which was a

significant downward variance from the guidelines range. In sum, the district court did everything that was procedurally required before sentencing Defendant.

Similarly, we conclude that Defendant's sentence was also substantively reasonable. Defendant received a sentence that was the statutory minimum—the lowest sentence the district court could impose. *See United States v. Briggs*, 431 F. App'x 389, 397 (6th Cir. 2011). The district court explicitly stated that it found the 180-month sentence to be "sufficient but not greater than necessary" to achieve the goals of § 3553(a). Furthermore, there is nothing in the record to suggest that the district court "select[ed] a sentence arbitrarily, base[d] the sentence on impermissible factors, fail[ed] to consider relevant sentencing factors, or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 616 F.3d 605, 610 (6th Cir. 2010) (internal quotation marks omitted).

Defendant's mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment outlined in § 3553(a) is insufficient to rebut the presumption of reasonableness given to within-guidelines sentences—a presumption that is even stronger when "the variance results in a sentence even more favorable to the challenging Defendant than a within-Guidelines sentence." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008); *see also United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006). Since Defendant cannot show any violation of law or abuse of discretion, he cannot establish that the statutorily-prescribed minimum sentence was unreasonable.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** both the district court's denial of Defendant's motion to suppress and the statutorily minimum sentence it imposed after Defendant was found guilty in a trial by jury.