NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0601n.06

No. 10-1331

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 23, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PAUL DELGADO, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Paul Delgado challenges the five-year prison sentence the district court imposed after Delgado admitted he violated the terms of his supervised release. Because we conclude that the sentence was procedurally and substantively reasonable, we **AFFIRM**.

## I. FACTS

In 2001, Delgado pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846. The district court imposed a term of imprisonment of 120 months, followed by five years of supervised release. The court reached the 120-month sentence by departing downward under U.S.S.G. § 5K2.0 from the applicable guideline range of 135 to 160 months. Delgado served his prison sentence and began his term of supervised release on December 12, 2008.

On January 25, 2010, the probation officer filed a petition for revocation of supervised release alleging three Grade C violations: (1) on October 6, 2009, agents with the Drug Enforcement Administration (DEA) executed a search warrant at Delgado's home and confiscated from his person a baggie containing 28.1 grams of marijuana; (2) Delgado did not answer truthfully all inquiries of his probation officer; and (3) Delgado failed to work regularly at a lawful occupation. During execution of the search warrant, DEA agents noted a Range Rover SUV in the garage of Delgado's residence, a vehicle they had observed Delgado driving on several occasions. Although Delgado was required to list on his monthly supervision report all vehicles owned or driven by him during the month, Delgado did not mention the Range Rover. Further, on August 5, August 30, September 23, and October 27, 2009, Delgado reported he was working as head of housekeeping at a hotel earning $960.00 every two weeks. To verify his employment, Delgado presented paycheck stubs to the probation officer, who contacted the hotel and learned that Delgado was not an employee in August, September, or October 2009. Delgado devoted time and meticulous effort to the manufacture of the fraudulent check stubs, and the probation officer did not know what activities Delgado had actually engaged in during the time he claimed to be working.

The probation officer reported to the court that Delgado's general adjustment to community supervision was poor. Of special concern was Delgado's new arrest on drug trafficking charges in early October 2009, less than one year after his release from federal prison, even though that criminal complaint was ultimately dismissed. Delgado lived with his brother and co-defendant, Vincent Delgado, on Lakeshore Drive in Harrison Township, and at the time of the revocation hearing, Delgado was working as a gas station manager in Detroit.

At the revocation hearing, neither party presented testimony or other evidence. Delgado admitted all three violations of his supervised release. The government argued that it appeared Delgado had returned to drug-trafficking based on the confiscation of marijuana from his person during execution of the search warrant at his home and his access to sufficient financial resources to drive a Range Rover while falsely claiming to earn $960.00 biweekly at lawful employment. The government noted that Delgado lied to the court more than once when he supplied his probation officer with falsified paycheck stubs and employment information.

Delgado did not attempt to defend his conduct in lying about employment and fabricating paycheck stubs. He argued, however, that his girlfriend informed the police officers who executed the search warrant at his home that the small amount of marijuana found in the kitchen belonged to her. He also argued that he borrowed the Range Rover from his mother to run errands and that he notified the probation officer the first time he used the vehicle, but he conceded that he did not report his use of the vehicle on numerous subsequent occasions. Delgado asked the court to consider that all of his drug screening tests were negative, that he was working seven days a week, and that he was complying with his tether and curfew restrictions. Delgado declined the opportunity for allocution.

Based on Grade C violations and a Criminal History Category I, the guideline range for imprisonment was three to nine months. U.S.S.G. § 7B1.4 (2009). The maximum statutory penalty for a violation of supervised release was five years because Delgado was originally convicted of a Class A felony. 18 U.S.C. § 3583(e)(3).

The district court imposed the maximum five-year sentence, having "never in my experience in life and as a judge seen anything like this [situation]" in which a defendant manufactured

paycheck stubs and presented them to the probation officer as genuine evidence of lawful employment. (Revocation Hr'g Tr. at 7.) The court was dismayed by Delgado's complete unwillingness to conform to the rules of society and his "total disregard for any respect of the law," especially when he had served a long prison sentence and was placed on supervised release to provide opportunities for his rehabilitation into society. (*Id.* at 7-8.) The court was very concerned that Delgado lived in the "lap of luxury" at a time when he did not have a paying job. (*Id.* at 8.)

Addressing the sentencing factors under 18 U.S.C. § 3553(a), the court stated it considered the advisory guideline but found a guideline sentence of three to nine months would offer inadequate punishment for Delgado's "very, very serious" conduct. Although the nature and circumstances of the offense were slightly different from the offending conduct on supervised release, the court found that Delgado's "outrageous" actions showed "a total, 100 percent disregard for society." (*Id.* at 9.) Having believed that the 120-month prison sentence imposed originally would deter Delgado from further criminal conduct, the court was distressed to learn that was not the case. Therefore, the court felt a need to send "a stronger message" to deter Delgado from crime, to deter others from crime, and to protect the public. The court found the maximum five-year sentence was appropriate. As a result of imposing that sentence, the court could not require an additional term of supervised release. In any event, the court decided that supervised release would be of no benefit to Delgado.

The court did not give Delgado an opportunity to object to the sentence after the court pronounced it. *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). Delgado was immediately remanded to custody.

## II. STANDARD OF REVIEW

A district court may revoke a defendant's term of supervised release and require the defendant to serve a new term of imprisonment under 18 U.S.C. § 3583(e). *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008). A sentence imposed following revocation of supervised release is reviewed under the same standards that apply to a sentence imposed following conviction. *Polihonki*, 543 F.3d at 322; *United States v. Johnson*, 640 F.3d 195, 201 (6th Cir. 2011).

"The touchstone of appellate review of a district court's sentencing decision is reasonableness, a concept that has both a procedural and a substantive component." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Delgado challenges both the procedural and substantive reasonableness of the five-year sentence. Although he suggests we should review the procedural reasonableness of the sentence for plain error, we will apply the typical abuse-of-discretion standard. *See id.* We do so because the district court did not give Delgado an opportunity to object to the sentence after the court pronounced it, *see Bostic*, 371 F.3d at 872, and the government did not ask us to review for plain error.

"A sentence is procedurally unreasonable where a district court fails to calculate or improperly calculates the Guidelines range, treats the Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) sentencing factors, selects a sentence based upon erroneous facts, or fails to adequately explain its chosen sentence and its deviation, if any, from the Guidelines range." *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011). If we determine the sentence was procedurally sound, we then consider whether the sentence was substantively reasonable, taking into account any variance from the guideline range. *See Polihonki*, 543 F.3d at 322. A sentence is substantively

unreasonable if the district court chooses the sentence arbitrarily, bases the decision on impermissible factors, fails to consider relevant sentencing factors, or gives unreasonable weight to any pertinent factor. *Id.*

## III. DISCUSSION

Having carefully reviewed the record, we conclude that Delgado did not identify any procedural shortcoming in the district court's sentencing method that would warrant reversal. As required, the district court properly calculated the applicable guideline range on revocation of supervised release, treated the Guidelines as advisory, considered the § 3553(a) factors, and explained the chosen sentence, including the upward variance from the guideline range. *See Johnson*, 640 F.3d at 201-02; *Polihonki*, 543 F.3d at 323; *United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011).

Delgado contends that the district court did not thoroughly discuss the § 3553(a) factors when explaining a reasoned basis for the sentence imposed. We disagree. First, the court considered the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The court took note that Delgado was originally sentenced for drug-trafficking and that he admitted new drug-related conduct. Although Delgado argued that the confiscated marijuana belonged to his girlfriend, that position conflicted with his admission to the first allegation in the revocation petition, which asserted that drug agents found the marijuana on Delgado's person. The new drug-related conduct, combined with Delgado's fraudulent conduct in lying to the probation officer about his employment and fabricating paycheck stubs, led the court to conclude that Delgado was unwilling to conform to the rules of the court or of society.

The district court considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). The court also considered the need to afford adequate deterrence to criminal conduct, the need to protect the public from further crimes of the defendant, and the kinds of sentences available. 18 U.S.C. § 3553(a)(2)(B) & (C), §3553(a)(3) & (4). In the district judge's view, Delgado's conduct was "a very, very serious matter," especially because the judge, having served on the bench for many years, had never encountered a similar fraud perpetrated on the court and its probation officer. Delgado's willingness to engage in such conduct indicated he did not respect the court or the law. Moreover, the completion of a ten-year federal prison sentence did not deter him from engaging in additional criminal conduct. After expressly considering the advisory guideline range, the court found that a sentence between three and nine months could not assure adequate deterrence or constitute sufficient and just punishment for Delgado's conduct. A "stronger message" was necessary, the court said, to deter Delgado and others, and to protect the public from harm. All of these factors compelled the court to vary upward from the advisory guideline range to the maximum penalty available.

Finally, the district court considered rehabilitative factors, *see* 18 U.S.C. § 3553(a)(2)(D), but determined that the interest in rehabilitation did not outweigh the need for a lengthy term of imprisonment. The court originally imposed a term of supervised release precisely to aid Delgado in his rehabilitation into society, to no avail. Delgado did not hold a job throughout the period of supervised release, lied to his probation officer about his employment, fabricated paycheck stubs,

and otherwise failed to conduct himself in a lawful manner. For these reasons, the court believed that it was highly likely Delgado would not take seriously any future period of supervised release.

Delgado suggests that the district court took into account unproven and erroneous factors, including that he did not work at a paying job and that he was living "in the lap of luxury." Delgado was gainfully employed by the time of the revocation hearing, but he admitted that he did not work at a regular job for several months in late 2009 when he led the probation officer to believe that he was working. The court did not have before it any evidence of income from gainful employment during those months. Additionally, Delgado lived in a part of Harrison Township that the district court knew afforded Delgado a comfortable standard of living. We cannot say that the district court erred when it considered these factors in light of Delgado's new arrest for drug-trafficking.

The court might have addressed more explicitly the guideline policy statements and the need to avoid unwarranted sentencing disparities, 18 U.S.C. § 3553(a)(5) & (6), but we have never required a ritualistic incantation of the § 3553(a) factors, and we do not require it here. *See Polihonki*, 543 F.3d at 324. Thus, we conclude that the sentence was procedurally reasonable.

Turning to the substantive reasonableness of the sentence, we are not persuaded that the district court's imposition of the five-year maximum penalty available on revocation of supervised release was an abuse of discretion. We do not presume the sentence is unreasonable simply because it falls outside the guideline range. *See Gunter*, 620 F.3d at 645. Instead, we give "due deference" to the district court's determination that the § 3553(a) factors justified the upward variance, *id.*, and we focus our review on whether the length of the sentence was greater than necessary to achieve the sentencing goals set forth in § 3553(a). *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33

(6th Cir. 2010). It appears to us that the district court did not select the sentence arbitrarily, base the sentence on impermissible factors, fail to consider pertinent § 3553(a) factors, or give an unreasonable amount of weight to any pertinent factors. *See United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008), *cert. denied*, 130 S.Ct. 516 (2009).

Delgado urges us to conclude that the district court should have given greater weight to certain mitigating factors, such as his negative drug screening tests, his work at paid employment prior to the revocation, and his compliance with tether and curfew restrictions placed upon him by the magistrate judge pending the revocation hearing. These mitigating factors "do lend some support for a reduced sentence." *United States v. Jones*, 489 F.3d 243, 253 (6th Cir. 2007). Despite a lengthy history of drug abuse, Delgado did refrain from ingesting drugs, and he did obtain paid employment at some point before the probation officer decided to file the revocation petition. Further, Delgado abided by the tether and curfew restrictions, even if his compliance with the demands of supervision came late in the day.

Because the district court did not make express findings with regard to these mitigating factors, we cannot be absolutely certain that the district court considered them when it weighed and balanced the § 3553(a) factors in choosing an appropriate sentence. But we think it is implicit in what the court did say when balancing the § 3553(a) factors that the court determined Delgado's misconduct and serious disrespect for the rules of the court and society counterbalanced the mitigating factors and militated in favor of the upward variance from the applicable guideline range.

Having considered the § 3553(a) factors and the fact that Delgado's original conviction was a Class A felony, the district court determined that the maximum five-year sentence on revocation

of supervised release was necessary to deter future criminal conduct of Delgado and others, to protect the public, and to promote respect for the law. *See Lanning*, 633 F.3d at 474-75 (noting that the district court carefully balanced § 3553(a) factors to arrive at upward variance). Although Delgado claims that his sentence amounted to a disproportional upward variance from the advisory guideline range, since *Gall v. United States*, 552 U.S. 38 (2007), we give due deference to the district court's "'reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.'" *United States v. Klups*, 514 F.3d 532, 539 (6th Cir. 2008) (quoting *Gall*, 552 U.S. at 59-60). Certainly, in considering the § 3553(a) factors in the course of determining 'that an outside-Guidelines sentence is warranted,' the district judge 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id.* (quoting *Gall*, 552 U.S. at 50). In light of the district court's analysis, we cannot conclude that the sentence, including the extent of the upward variance, was substantively unreasonable. The fact that we might reasonably have concluded that a different sentence was appropriate is not sufficient to justify reversal. *See Lanning*, 633 F.3d at 474.

## IV. CONCLUSION

For all of the reasons stated, the sentence imposed by the district court on revocation of supervised release was not procedurally or substantively unreasonable. Accordingly, we **AFFIRM.**