NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0092n.06

Case Nos. 20-5281/5282

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 17, 2021<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| ROBERT S. RICHARDSON, | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: MOORE, ROGERS, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** Robert S. Richardson was caught submitting a fraudulent passport application. After Richardson pleaded guilty to various federal crimes related to the incident, further revelations about his near quarter century of deceiving others as to his identity came to light. This long history of deceit coupled with his lack of candor to the district court and its officers following his arrest prompted the district court to impose a sentence of 48 months of imprisonment, which exceeded the guidelines range by 12 months. Before this Court, Richardson challenges the sentence's reasonableness. Finding no abuse of discretion, we affirm.

**BACKGROUND**

While living in South Carolina, Robert Richardson visited a Tennessee post office, ostensibly to replace his missing passport. The passport application he submitted listed the

applicant's name as Robert Ayer Richardson and his date of birth as October 3, 1958. The application also listed a Social Security number and a place of birth (Columbia, South Carolina). To support his application, Richardson showed the postal clerk a driver's license and two credit cards, each of which identified the applicant as Robert Ayer Richardson.

Upon reviewing the application, federal authorities became suspicious. Following an investigation, the authorities learned that a passport renewal application for Robert Ayer Richardson submitted just two years earlier had been rejected. Authorities also discovered that Robert Ayer Richardson was born in Newberry (not Columbia), South Carolina. And, authorities learned, Robert Ayer Richardson was dead. Subsequent investigations revealed that the renewal application was submitted by Robert *Stone* Richardson, born February 3, 1950. That Robert Richardson, while alive and seemingly well, was later charged with attempting to renew a passport he had fraudulently obtained decades earlier in the name of Robert Ayer Richardson. Richardson eventually pleaded guilty to passport, Social Security, and identity fraud charges.

When it came to Richardson's fondness for deception, the proverb "old habits die hard" could not be more fitting. For even in the face of federal fraud charges, Richardson stayed true to form, providing what likely amounted to false information to two different probation departments during his presentence interview. For example, three of the companies Richardson disclosed to the probation office as former employers either denied having ever employed Richardson or lacked any record of doing so. And despite Richardson's telling probation officers that he lived and worked in China during the mid-1990s, U.S. Customs and Border Protection had no record of Richardson ever traveling to China during that period. On top of that, Richardson refused to use his full name in his plea agreement, signing as "R. Richardson," and thereby prompting prosecutors to make him testify under penalty of perjury to establish his true identity.

2

All of this set the stage for Richardson's sentencing. The district court calculated the Sentencing Guidelines range for Richardson's offenses to be 30 to 36 months. Richardson sought a sentence of 30 months or less on the grounds that he had initially assumed the identity of Robert Ayer Richardson, who was about eight years younger, to combat years of frustration with ageism in the job market. To Richardson, his crime was solely the result of trying to "keep a roof over his family's head, put adequate food on the table, and provide for" his loved ones. Richardson also noted his accomplishments as an engineer and as a competitive bodybuilder, which, according to Richardson, culminated in his placing in the Mr. America contest in 1988.

The government, by contrast, sought an upward variance of 60 months based on the scope and duration of Richardson's misconduct as well as the lack of respect he had shown for the law following his arrest. New evidence discovered leading up to Richardson's sentencing only strengthened the government's hand. Richardson's estranged fiancée disclosed multiple fraudulent forms of identification dating back to the 1980s formerly possessed by Richardson, including IDs using a variation on the name Jeffrey Butler. Federal investigators, moreover, could not find Richardson's name on any records of the Mr. America finalists in the late 1980s. Richardson resisted the government's narrative, characterizing the government's investigations into his history and employment claims as inconclusive. His main contention, however, was that an upward variance was unjustified given the lack of any concrete harm to an identifiable victim. The district court varied the sentence upward, sentencing Richardson to 48 months of imprisonment. Richardson's timely appeal followed.

**ANALYSIS**

1. Richardson makes two arguments as to why his sentence was unreasonable. He first contends that the sentence was based on an impermissible factor—namely, "unfounded

speculation" that he had engaged in additional fraudulent activity. While Richardson frames his argument as a challenge to the substantive reasonableness of the sentence, we view the "consideration of an impermissible factor . . . [as] a procedural, not substantive, error." *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016). At bottom, an argument that a sentence resulted from unreasonable speculation is "simply another way of saying that the district court selected a sentence based on clearly erroneous facts." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (cleaned up). Before we will reverse a sentence on this ground, we must be left with a "definite and firm conviction" that the district court made a mistake. *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018). We apply the abuse-of-discretion standard in evaluating the reasonableness of a sentence. *Id.*

The district court made no mistake here. Its conclusion that Richardson engaged in additional fraudulent conduct was based not on speculation, but rather on unrefuted evidence showing that Richardson possessed almost a dozen fraudulent forms of identification. Several of Richardson's fake IDs utilized a different name—Jeffrey Butler—and at least one dated back to the early 1980s. All of this undermined Richardson's argument that his fraud was limited in its purpose and scope to boosting his job prospects as he aged. From this evidence, the district court could reasonably infer that Richardson had engaged in extended fraud not reflected in his criminal history. *See United States v. Howder*, 748 F. App'x 637, 644 (6th Cir. 2018) (observing that "sentencing courts may draw reasonable inferences from the factual record before them" (quoting *United States v. Poulson*, 871 F.3d 261, 268–69 (3d Cir. 2017))). After all, a district court may consider any reliable information in making its sentencing decision, *see United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013), including information that reflects the existence of uncharged crimes by a preponderance of the evidence, *see United States v. Rankin*, 929 F.3d 399,

407 (6th Cir. 2019). The record here thus makes this case unlike *United States v. Van*, where a district court fashioned a sentence based wholly on its unsupported suspicions that the defendant had participated in a mysterious criminal "scheme." 541 F. App'x 592, 597–98 (6th Cir. 2013).

Richardson's arguments to the contrary are unavailing. He first points to the district court's comment during sentencing that it did not "know specifically the harm that" may have resulted from Richardson's various fraudulent activities. But it was not the purported harm that Richardson's crimes had on his victims that drove the sentence upwards. Instead, the district court's view, well supported by the record, was that Richardson committed "additional fraudulent behavior" that went well "beyond the defendant's stated intention of engaging in some fraudulent conduct only . . . [to be] competitive in the workplace." Richardson also argues that the district court inappropriately speculated that Richardson lied about his exploits at the Mr. America competition. But even assuming Richardson was being truthful in describing his success as a bodybuilder, the record shows that only the government—and not the district court—discussed the issue at sentencing. And a sentencing court does not err where the record shows no reliance on the government's speculative representations. *See United States v. Aguilar-Calvo*, 945 F.3d 464, 470 (6th Cir. 2019).

2. Richardson also argues that his case is within the "heartland" of those contemplated by the Guidelines, making the upward variance substantively unreasonable. In evaluating an upward variance's substantive reasonableness, we consider whether the district court distinguished the case from a "mine-run case." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2668 (2020). And we further consider "the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). "The farther the judge's sentence departs from the

Guidelines sentence, the more compelling the justification based on factors in § 3553(a) must be." *United States v. Aleo*, 681 F.3d 290, 299 (6th Cir. 2012) (cleaned up).

The district court did not abuse its discretion in applying an upward variance to Richardson's sentence. Here, the sentencing court articulated its well-founded justifications about two unique aspects of Richardson's case. First, Richardson's identity fraud was not isolated to the day he entered the post office to renew a fraudulent passport. Richardson's deceptions were longstanding, numerous, and not contemplated by his criminal history score, thereby warranting an upward variance. *See, e.g.*, *United States v. Tucker*, 315 F. App'x 220, 223 (11th Cir. 2009) (affirming a district court's conclusion that a defendant's long history of using false identities supports an above-Guidelines sentence). Second, as the district court observed, Richardson's conduct during his prosecution—his initial refusal to disclose his true identity, his early lies to the probation department, his less-than-candid discussion of his employment history, and his apparently deceitful averments about the motives for his conduct—demonstrated unusually "clear disrespect for the law." Suffice it to say, Richardson's repeated inability to tell the truth to the district court or its officers represents conduct beyond the contemplation of his recommended Guidelines range and supports an upward variance. *See, e.g.*, *United States v. Brock*, 501 F.3d 762, 774 (6th Cir. 2007) (affirming a 45% upward variance, after noting defendant's particular disrespect for the law), *abrogated on other grounds by Ocasio v. United States*, 136 S. Ct. 1423 (2016).

True, as the district court acknowledged, there was no evidence that Richardson's behavior resulted in any pecuniary or reputational loss to a third party. But the existence of a mitigating factor does not necessarily undermine a decision to vary upward. *See, e.g.*, *United States v. Delgado*, 427 F. App'x 498, 503 (6th Cir. 2011) (affirming decision varying upward,

notwithstanding mitigating factors); *see also United States v. Davila-Gonzalez*, 595 F.3d 42, 49 (1st Cir. 2010) ("Merely raising potentially mitigating factors does not guarantee a lesser sentence."). And here, other distinct aspects of Richardson's case, most notably, his extensive fraud, supported the variance. In view of that history, we cannot say that the district court abused its discretion by imposing a sentence 12 months above the Guidelines range.

## CONCLUSION

For the aforementioned reasons, we affirm the judgment of the district court.