RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*

TIMOTHY ANDREW LANNING (09-1675) and
PAULA MARIE CALDERON (09-1715),
          *Defendants-Appellants.*

Nos. 09-1675/1715

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 08-00309-001; 08-00309-002—Janet T. Neff, District Judge.

Decided and Filed: February 2, 2011

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

—————————————

**COUNSEL**

**ON BRIEF:** Donald W. Garthe, Grandville, Michigan, Michael Darragh Hills, Kalamazoo, Michigan, for Appellants. Nils R. Kessler, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge. Timothy Andrew Lanning and Paula Marie Calderon were each charged with conspiring to steal and alter checks taken from the mail, which they then presented to unsuspecting stores for merchandise that was later returned for a cash refund. They both pled guilty to the charged offense. The district court subsequently sentenced each of them to 42 months' imprisonment and required restitution of the amount stolen. In both cases, the court varied upward from the

1

applicable United States Sentencing Guidelines (U.S.S.G.) range. For the reasons set forth below, we **AFFIRM** the judgments of the district court.

## I. BACKGROUND

Lanning and Calderon engaged in a joint scheme to steal personal checks from individuals' mailboxes, to alter those checks in order to use them to purchase items at retail stores, and then to return those items to the stores for cash. The technical charges in their joint indictment were for conspiracy to steal mail, to possess stolen mail, and to possess and utter forged securities, all in violation of 18 U.S.C. §§ 371, 1708, and 513(a). In total, they stole approximately $15,000 through this scheme. Both defendants pled guilty to the first count in the indictment, which subjected each of them to a statutory maximum sentence of five years' imprisonment. Their separate appeals were consolidated for the purposes of briefing and submission.

### A.      Lanning's sentence

Based on a total offense level of 8 and a criminal history category of VI, the applicable Guidelines range for Lanning was 18 to 24 months of imprisonment. The district court denied the government's motion for an upward departure and Lanning's motion for a downward departure, both of which were based on U.S.S.G. § 4A1.3. This Guideline permits an upward or a downward departure from the otherwise applicable Guidelines range if the defendant's criminal-history scoring substantially under- or over-represents the seriousness of the prior offenses. The court did, however, vary upward after considering the 18 U.S.C. § 3553(a) sentencing factors by sentencing Lanning to 42 months of imprisonment.

When the district court invited Lanning to speak on his own behalf, Lanning argued that his unhappiness with his current situation and his support network would prevent him from reoffending. He also explained that a number of his criminal-history points were for driving-related offenses and that his current conviction was the most serious that he had ever faced. The government responded by discussing the severity of Lanning's crime, its effect on the victims, Lanning's allegedly pandering statements

made in order to receive a lower sentence, and his extensive criminal history. Lanning then sought to readdress the court in order to "straighten out a fact" after the government made its argument, but the court denied his request.

In deciding to vary upward, the district court went through the 18 U.S.C. § 3553(a) sentencing factors individually and explained how each factor applied in Lanning's case. The court further noted that although Lanning's offense was not violent or drug related, his actions of stealing mail and altering checks are very serious in their own right because the actions undermine the integrity of the mail system, cause distress to the affected individuals, and disrupt society. Lanning's lengthy criminal history also influenced the court's decision to vary upward. The court noted that he had a continuous criminal history going back approximately ten years in many different jurisdictions, including numerous theft charges. In the court's assessment, despite Lanning's "impressive vocabulary" and apparent potential for gainful employment, he essentially made his living as a thief.

The district court then considered the sentencing goals enumerated in 18 U.S.C. § 3553(a). Lanning's multiple offenses over a long duration clearly showed, according to the court, that he "doesn't have any respect for the law" and warranted substantial punishment. The goals of providing deterrence and protecting the public also weighed in favor of a more severe punishment because the court determined that, "without a significant period of incarceration," Lanning would very likely commit further criminal offenses. It concluded that substantial punishment was therefore necessary to protect the public from people who "violate the trust that we all are entitled to have in the integrity of our postal service, and our financial system." The court also thought that the Bureau of Prisons might have some treatment that could help Lanning deal with his tendencies to steal and that the Bureau could determine whether he needed any drug treatment. Finally, the court considered the goal of avoiding unwarranted sentencing disparities between similarly situated defendants, comparing Lanning's sentence to the sentences of both Calderon and other defendants nationwide who had committed similar offenses.

Accounting for all of these factors, the district court concluded that the Sentencing Guidelines did not "properly reflect the factors under the statute." The court therefore granted the government's motion for an upward variance and sentenced Lanning to 42 months' imprisonment, followed by three years of supervised release, and ordered $15,286.92 in restitution.

**B.     Calderon's sentence**

Calderon's total offense level of 8 and criminal history category of V yielded a Guidelines range of 15 to 21 months of imprisonment. Ultimately, however, the court varied upward to sentence Calderon the same as Lanning—to 42 months of imprisonment, followed by three years of supervised release, and ordered $15,286.92 in restitution.

As with Lanning, the district court engaged in a detailed analysis of the 18 U.S.C. § 3553(a) sentencing factors with regard to Calderon. The court commented on a number of the same factors that it discussed during Lanning's sentencing, and concluded that "the seriousness of this offense goes way beyond what the advisory Guidelines range might suggest." In analyzing Calderon's personal history and characteristics, the court pointed out that she has a criminal history going back at least ten years, "mostly for the same kind of offenses that we see here." Although the court considered various positive or sympathetic details in her history, including her working on a General Equivalency Diploma (GED) and dropping out of school at age 14 because she was pregnant, the court concluded that "[w]hatever good things we see are balanced by every indication in the record that she will continue to offend." The court thus concluded that Calderon's advisory Guidelines range did not adequately account for her history and characteristics.

Addressing the 18 U.S.C. § 3553(a) goals of providing just punishment and promoting respect for the law, the district court reasoned that Calderon's recorded phone calls made from prison that encouraged a family member to commit the very type of crime that Calderon had committed in the present case "establish a total lack of respect for the law." It determined that these conversations, in combination with "the nature and

extent of this offense[,] call for significant punishment beyond that which the Guidelines provide." The court also noted Calderon's violation of the public trust, the individual trust of her victims, and her high potential for reoffending. These aspects of her crimes led the court to conclude that the values of deterrence and protection of the public "outweigh[ed] the fairly minimal amount of incarceration suggested by the . . . advisory Guidelines." Finally, the court considered the need for rehabilitation and avoiding unwarranted sentencing disparities. The court strongly believed, based on the statutory factors, "that an advisory Guidelines range of 15 to 21 months is not anywhere near adequate to address the offense and the offender currently before this court."

## C.    Lanning's and Calderon's appeals

Lanning and Calderon each timely filed notices of appeal. On appeal, Lanning argues that his sentence is substantively unreasonable because the district court granted an upward *variance* based on his criminal history after denying an upward *departure* based on the same criminal history. He also argues that he was denied his right to refute an allegedly untruthful statement of fact made by the government at sentencing. Calderon, in turn, argues that her sentence is unreasonable because the district court granted an upward *variance* based mainly on her criminal history, which had already been accounted for by the court's upward *departure* in calculating her criminal-history level.

## II. ANALYSIS

Criminal sentences are reviewed for procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). This review is conducted under the deferential abuse-of-discretion standard. *United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009). Substantive-reasonableness claims do not need to be raised before the district court to be preserved for appeal. *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008). But "if a sentencing judge asks . . . whether there are any objections not previously raised, in compliance with the procedural rule set forth in *United States v. Bostic*, 371 F.3d 865 (2004)[,] and if the relevant party does not object, then plain-error

review applies on appeal to those" procedural-reasonableness arguments that were not preserved in the district court. *Penson*, 526 F.3d at 337 (brackets omitted) (quoting *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)). Moreover, "[a]lthough this court's presumption of reasonableness applies only to sentences inside of the Guidelines range, there is no presumption against a sentence that falls outside of the range." *United States v. Tate*, 516 F.3d 459, 469-70 (6th Cir. 2008) (emphasis omitted).

"Procedural reasonableness requires that a district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (citation and internal quotation marks omitted). But the Supreme Court has made clear that, for sentencing purposes, "[t]he appropriateness of brevity or length, conciseness or detail . . . depends upon circumstances" that are left "to the judge's own professional judgment." *Rita v. United States*, 551 U.S. 338, 356 (2007).

If the district court's sentencing decision is deemed procedurally sound, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. District courts are obligated to impose "a sentence sufficient, but not greater than necessary" to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a). We must give "due deference" to the district court's decision that the § 3553(a) factors justify a variance. *Gall*, 552 U.S. at 51. A "sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, — F.3d —, —, 2011 WL 31414, at *4 (6th Cir. Jan. 6, 2011) (published opinion). "The fact that [this] court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

**A.      Lanning's sentence**

*1.      Substantive reasonableness of Lanning's sentence*

Lanning does not challenge the procedural reasonableness of his sentence. "We will therefore limit our reasonableness review to whether the above-Guidelines . . . sentence was substantively reasonable." *See United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). First, Lanning argues that his sentence is arbitrary because the district court refrained from imposing an upward departure regarding his criminal history category, yet inconsistently imposed an upward variance primarily based on Lanning's history of petty crimes. We will review this substantive-reasonableness claim under the generally applicable abuse-of-discretion standard even though it was not raised below. *See Penson*, 526 F.3d at 337.

Contrary to Lanning's assertions, the district court did not overly emphasize his criminal history and likelihood of reoffending, but rather carefully balanced the § 3553(a) factors to arrive at its upward variance. In addition to considering Lanning's prior offenses and his likelihood of reoffending, the court based its upward variance on the need for deterrence and protection of the public, the seriousness of Lanning's crime, the need to provide him with rehabilitative treatment, and Lanning's lack of respect for the law. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009) ("[E]ven if the court's departure cannot be sustained under § 4A1.3, the seriousness of Herrera-Zuniga's criminal history was not the only consideration on which the district court relied in imposing a harsher sentence. The district court also noted several § 3553(a) factors that warranted imposing a harsher sentence."). Lanning's upward variance was therefore not inconsistent with the district court's decision to refrain from raising his criminal history category under U.S.S.G. § 4A1.3.

Moreover, even though the district court concluded that Lanning's criminal history and likelihood of reoffending did not warrant an upward departure under § 4A1.3, these very same factors may properly be taken into account in the court's decision to impose an upward variance under 18 U.S.C. § 3553(a). In a case from one of our sister circuits that this court has relied on, the defendant "argue[d] that the district

court acted inconsistently by declining to depart under USSG § 4A1.3(a) for an underrepresented criminal history and then varying upward based on [the defendant's] commission of serious crimes and his potential for recidivism." *United States v. Solis-Bermudez*, 501 F.3d 882, 885 (8th Cir. 2007), *cited favorably by Herrera-Zuniga*, 571 F.3d at 590. The Eighth Circuit explained that an aspect of a defendant's criminal history that does not warrant a departure under U.S.S.G. § 4A1.3(a) might still form the basis for a variance under 18 U.S.C. § 3553(a) because

> these standards are not the same. Whereas § 3553(a)(1) and (a)(2)(C) broadly permit the district court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant," USSG § 4A1.3(a)(1) more narrowly permits an upward departure if the defendant's criminal history category under the advisory Guidelines "*substantially under-represents* the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." (Emphasis added.) Moreover, unlike § 3553(a)(1) and (a)(2)(C), the Guidelines policy statement lists specific circumstances justifying an upward departure for substantial underrepresentation of criminal history.

*Solis-Bermudez*, 501 F.3d at 886 (footnote omitted).

The district court in the present case, in deciding to impose an upward variance, concluded that Lanning's criminal history shows that he "has made a living as a thief." In contrast, the court did not reach such a broad characterization concerning Lanning's past crimes when deciding whether to impose an upward departure based on Lanning's criminal history. The court also connected Lanning's high likelihood of reoffending (a conclusion that the court reached earlier in the sentencing proceeding based on Lanning's criminal history) to the § 3553(a) sentencing goals of deterrence and protection of the public. As in *Solis-Bermudez*, the court below thus considered additional aspects of the defendant's criminal history beyond what it considered in deciding to refrain from upwardly departing under § 4A1.3(a).

Moreover, even if a district court would be justified in imposing a § 4A1.3(a) upward departure based on the defendant's criminal history, the court may still

determine that an upward variance based on § 3553(a)'s broader goals is the more appropriate course of action. *See id.* at 887 (holding that there is "no inconsistency between the district court's discretionary determination that the failure to include this conduct in the criminal history scoring did not 'substantially under-represent[]' the seriousness of [the defendant's] criminal history, USSG § 4A1.3(a)(1), and its decision to impose an upward variance based on the broader § 3553(a) considerations"). Lanning's upward variance was therefore not an abuse of the court's discretion.

Lanning also questions the extent of his upward variance. His sentence of 42 months' imprisonment was well above his advisory Guidelines range of 18 to 24 months, though considerably below the statutory maximum sentence of 60 months (5 years). Although we may consider the extent of the deviation in reviewing a district court's sentence, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *See Gall*, 552 U.S. at 51. Lanning's applicable Guidelines range was for the general crimes of theft or forgery, but these broad categories do not reflect the specific activity of repeatedly stealing individuals' checks out of their mailboxes and altering them for Lanning's pecuniary gain. The district court thoroughly reviewed the § 3553(a) factors and determined that the specific nature of Lanning's actions justified its decision to vary upward. Under these circumstances, we find no abuse of discretion in the upward variance to 42 months of imprisonment.

### 2. *Lanning's allocution*

Rule 32(i)(4)(A)(ii) of the Federal Rules of Criminal Procedure provides that before imposing a sentence, the district court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Lanning challenges his sentence on the ground that he was not properly afforded this opportunity. If a defendant objects at sentencing to some limitation on his or her right of allocution, that claim is reviewed de novo. *United States v. Carter*, 355 F.3d 920, 926 n.3 (6th Cir. 2004). In the present case, after Lanning's request to readdress the court was denied, he asked if he could "at least straighten out a fact." This

follow-up request was also denied.  Because Lanning "indicate[d] some type of discontent" regarding his inability to readdress the court, we will review de novo his objection to his allocution.  *See id.*

"Allocution is the right to present a defendant's plea in mitigation and is not unlimited."  *Id.* at 926 (emphasis and citation omitted).  In *United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004), the defendant engaged in a lengthy allocution that questioned his alleged criminal history, addressed various aspects of his trial, and called on his mother to testify.  *Id.* at 393, *vacated in part on other grounds*, 543 U.S. 1182 (2005) (vacating this court's opinion in part in light of *United States v. Booker*, 543 U.S. 220 (2005)).  But the district court denied the defendant's further request to read a 15-page statement into the record.  *Id.*  This court determined that, "[b]ased on the totality of the circumstances, we see no merit to Bowker's argument that he was denied the right of allocution."  *Id.*

As in *Bowker*, the district court here afforded Lanning ample time for allocution that covered a variety of topics.  The court also asked Lanning questions during his allocution.  Then, before Lanning concluded, the court asked him if there was anything else that he would like to say.  Lanning declined the offer.  Moreover, Lanning has not pointed to any case holding that a defendant was denied a proper allocution because he or she was not allowed the last word in rebuttal to the government's argument.  We conclude that Lanning was not denied his right of allocution when the district court refused to allow him to readdress the court after the government rested.

Lanning also claims that the district court erred in refusing to allow him to readdress the court because the court must "rely only on reliable evidence at sentencing" and "[a] sentence may not be imposed on the basis of material misinformation." (Emphasis omitted.)  But in the two cases that Lanning cites in support of this argument, *United States v. Brika*, 487 F.3d 450 (6th Cir. 2007), and *Roberts v. United States*, 445 U.S. 552 (1980), the respective defendant pointed to specific information that he claimed the sentencing court should not have relied on.  *Brika*, 487 F.3d at 457-58; *Roberts*, 445 U.S. at 556-57.  Here, however, Lanning does not set forth any fact that he

was denied the opportunity to "straighten out." Absent such specificity, the district court cannot be said to have based Lanning's sentence on "unreliable evidence" or "material misinformation."

**B.     Calderon's sentence**

Turning now to Calderon, she objects to her sentence because "[i]n essence the district court granted an extraordinary 7 level upward variance from the original advisory guideline range of 10-16 months (offense level 8 & criminal history category IV), into a range of 37-46 months (offense level 15 & criminal history category V)." (Emphasis omitted.) She argues that "[t]he major thrust of the Court's decision to vary upward based on the [18 U.S.C. §] 3553(a) factors are the very same factors considered in her departure regarding criminal history category." Calderon also contends that "[t]he district court gave unreasonable weight to [her] criminal history" because "it departed upward from criminal history category IV to V, specifically not departing up to criminal history category VI," but then based its upward variance primarily on "Calderon's criminal history and the fact that she was on probation at the time of sentencing."

This argument could be construed as claiming that the district court impermissibly double counted Calderon's criminal history by considering it both when the court upwardly departed to criminal history category V and when the court later imposed an upward variance. Double-counting claims concern the procedural reasonableness of the defendant's sentence. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). Accordingly, we would review the claim under the plain-error standard because Calderon did not make this objection at her sentencing after the court asked the *Bostic* question. *See United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008).

On the other hand, Calderon's argument that the district court gave too much weight to her criminal history in deciding to impose an upward variance could be construed as a claim that her sentence is substantively unreasonable. *See United States v. Brooks*, — F.3d —, —, 2011 WL 31414, at *4 (6th Cir. Jan. 6, 2011) (published

opinion). We would review such a claim under the abuse-of-discretion standard even though it was not raised below. *See Penson*, 526 F.3d at 337.

Either way, Calderon's argument fails because the district court did not rely exclusively on Calderon's criminal history in varying upward, but rather discussed at length the various 18 U.S.C. § 3553(a) factors. In addition to considering the factors that influenced the court's decision to raise Calderon's criminal history category from IV to V—including her history of similar crimes, her likelihood of recidivism, and her violations of probation—the court also considered a number of other factors before granting the government's motion for an upward variance.

Calderon's offense was particularly serious, according to the district court, because even though it did not involve violence or weapons, her offense "involve[d] trust in an institution which is important to the functioning of our society, the functioning of our government, [and] the functioning of our democracy." The seriousness of Calderon's offense thus went "way beyond what the advisory guidelines range might suggest." Her personal history and characteristics, as well as her need for rehabilitation, also factored into the court's sentencing determination. Calderon's conversations while she was incarcerated, in which she encouraged a family member to engage in the same type of crime that Calderon had committed in the present case, further influenced the court's decision to vary upward because these communications established her lack of respect for the law.

Balancing the various 18 U.S.C. § 3553(a) factors, the district court concluded that an upward variance was warranted. Calderon's arguments that the court inappropriately relied on the same factors for both its upward departure and its upward variance, and that the court gave an unreasonable amount of weight to her criminal history, thus fail because the court considered numerous additional § 3553(a) factors beyond Calderon's criminal history when it decided to impose an upward variance. As with Lanning's sentence, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Moreover, as we discussed regarding Lanning's sentence, the very same factors that influence a district court to impose an upward departure in a defendant's criminal history category might be evaluated differently in imposing an upward variance under 18 U.S.C. § 3553(a). *See United States v. Solis-Bermudez*, 501 F.3d 882, 886-87 (8th Cir. 2007) (distinguishing between § 3553(a)'s broad sentencing goals and U.S.S.G. § 4A1.3(a)(1)'s more rigid criteria for considering departures from a defendant's presumptive criminal history category).

In the present case, the district court thoroughly discussed why the factors that led to its criminal-history-category departure from category IV to category V also supported the court's upward variance in line with the basic sentencing goals outlined in 18 U.S.C. § 3553(a). Calderon's criminal history expressly influenced the court's assessment of two of the § 3553(a) factors: (1) the defendant's history and characteristics, and (2) the need to provide adequate deterrence. According to the court, her "high potential for reoffense" based on her criminal history supported an upward variance because the sentencing goal of general deterrence "outweigh[ed] the fairly minimal amount of incarceration suggested by the . . . advisory Guidelines."

The district court's decision to raise Calderon's criminal history category pursuant to U.S.S.G. § 4A1.3(a) was based in part on her extensive criminal history and the possibility of her reoffending. But when the court considered these factors during its subsequent discussion of whether to impose an upward variance, the court assessed these factors in light of § 3553(a)'s "broader" sentencing goals. Based on the court's ultimate determination that Calderon's Guidelines range did not reflect the appropriate sentence under § 3553(a), we find no abuse of discretion in the district court's consideration of the same aspects of Calderon's criminal history that it had already analyzed in deciding to impose a one-level upward departure to her criminal history category under the Guidelines.

Calderon also argues that the "district court seemed to disregard the guideline score in this case as the Court never indicated the final guideline range." This claim is simply incorrect because, after the court increased Calderon's criminal history level from

IV to V, it stated that her total offense level was 8 and her "incarceration range under the advisory guidelines is 15 to 21 months." In sum, the district court in the present case thoroughly reviewed the 18 U.S.C. § 3553(a) factors regarding Calderon's sentence and did not abuse its discretion in sentencing her to 42 months of imprisonment.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgments of the district court.