NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0202n.06

No. 19-3171

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 08, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| DAVID L. FIEVET, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, STRANCH, and NALBANDIAN, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Defendant David L. Fievet ("Fievet") and his wife and co-defendant Gerolyn Fievet ("Gerolyn") misinformed the Social Security Administration ("SSA") about their living arrangements so that they could receive Supplemental Security Income ("SSI") on behalf of their disabled son, Turner. The government paid them $47,566.20 in SSI benefits over a seven-year period. Fievet pleaded guilty to a four-count indictment charging him with conspiracy to defraud the United States, theft of government property, social security fraud, and tampering with a witness. The district court imposed a 28-month sentence on Fievet, a 75-percent upward variance from the upper end of the Guidelines range. He challenges both the procedural and substantive reasonableness of that sentence on appeal. We affirm.

**I.**

**A.**

The Government charged Fievet with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); theft of government property, in violation of 18 U.S.C. § 641 (Count 2); social security fraud, in violation of 42 U.S.C. § 1383a(a)(2) (Count 3); and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3) (Count 4).  Fievet pleaded guilty to all four counts without a plea agreement.  During the plea colloquy, Fievet stated that he served in the U.S. Air Force and received an "Honorable" discharge.  Fievet provided the same information to probation in interviews and in his acceptance of responsibility statement.

The revised presentence report ("PSR") sets Fievet's base offense level at six.  Six levels were added for the loss amount, and two more for obstruction of justice,[1] giving an adjusted offense level of 14.  Fievet was given a two-point reduction for acceptance of responsibility for a total offense level of 12.  With a criminal history score of I, the Guidelines imprisonment range was 10 to 16 months.  The PSR did not identify any factors that might warrant a downward departure or variance.

In his sentencing memorandum, Fievet requested a downward departure pursuant to USSG § 5H1.6, arguing that his caretaking and financial support are irreplaceable to his family.  Fievet stressed that he is the only one in his household who can physically control his son Turner, who has autism and experiences "night fits" that cause him to become very aggressive.  Fievet further stated that he is caring for his wife, who suffers from numerous medical conditions and is unable to work outside the home, and his other son Nicholas, who still lives with, and is dependent upon, Fievet.

---

[1] Under the Sentencing Guidelines, the obstruction of justice count was grouped with the underlying offense counts but resulted in a two-level increase.  *See* PSR ¶ 21, R., 39, ID# 291-92.

In its sentencing memorandum, the Government agreed with the PSR's grouping of Counts 1 through 4 but argued that two additional points should be added under USSG § 3C1.1 because Fievet provided false information to probation and the court regarding the nature of his discharge from the United States Air Force. The Government attached Fievet's discharge paperwork, which showed that his Commander recommended that Fievet's discharge be characterized as "General," rather than "Honorable," based on "minor disciplinary infractions."[2] The Government explained that there is a significant difference between the two forms of discharge. "Honorable" discharge means that the airman's service "generally has met Air Force standards of acceptable conduct and performance of duty." In contrast, "[i]f an airman's service has been honest and faithful, ['Under Honorable Conditions (General)'] is warranted when significant negative aspects of the airman's conduct or performance of duty outweigh positive aspects of the airman's military record." (quoting AFI 36-3208, ¶ 1.18).

The Government offered another illustration of Fievet's record of dishonesty: In 2007 Fievet was arrested for money laundering and operating an illegal gambling house under the ruse that the proceeds would be donated to a charity for the disabled. Fievet pleaded guilty to possessing criminal tools and received a suspended sentence. This conviction added one point to Fievet's criminal history score.

The Government also objected to the acceptance of responsibility reduction because, in addition to his deceptive representations to the court, Fievet continued to gamble at casinos after being advised during his plea hearing that he would be required to pay restitution. In support, the Government submitted records from a local casino that purportedly detailed Fievet's gambling transactions and losses.

---

[2] These included passing bad checks, traffic violations, disobeying lawful orders, "demonstrat[ing] a pattern of misconduct and disrespect for authority," and committing other "various disciplinary infractions."

In his reply, Fievet acknowledged his passion for gambling and asserted that the Government had misinterpreted the casino's gambling data, which are estimates the casino compiles for internal purposes and do not reflect the actual loss data for any particular player. In support, Fievet presented his "poker records" for 2017 and 2018 detailing his wins and losses, which he claims establish that he is a "conservative player." He also argued that he did not misrepresent the nature of his discharge from the Air Force, because a discharge that is "general under honorable conditions" means that the "service has been honest and faithful." (citing AFI 36-3208, ¶ 18.2).

**B.**

The district court denied the Government's requested sentencing adjustments. The court found a total offense level of 12, a criminal history category of I, and an advisory Guideline range of 10 to 16 months.

The court also denied Fievet's request for a family-ties downward departure:

> I'm well acquainted with the discretion that I have [to grant a downwards departure]. . . . And I will state for the record that I've looked at what the guidelines might suggest for family ties or any other reason suggested by the record before me for a departure. None come to Mr. Fievet's aid. In fact, 5H1.1 speaks to a gambling addiction. You didn't ask under this, but an addiction to gambling is not a reason for a downward departure.

The district court then explained the basis for its sentence, expressly mentioning several factors listed in 18 U.S.C. § 3553(a). It addressed the nature and seriousness of the offense, stating "this is a case that must be dealt with severely. A lot of money was taken for no good reason . . . ." The unique nature of the victim—the SSA—added to the gravity of the offense.

The district court also considered Fievet's history and characteristics. The court remarked that Fievet had a "lamentable history" of doing "a lot of disreputable, deceitful things." "The fact of the matter is Mr. Fievet lied. His wife did too. He lied to gain a benefit to which he would not

have otherwise been entitled. He allowed that to persist until it stopped persisting because he was caught. And that's why we're here." The court listed some of Fievet's "disreputable, deceitful" acts: (1) "writing . . . bad checks and other things" while in the military, (2) living outside of Cleveland although required to live in the city as a condition of being a Cleveland firefighter, and (3) encouraging his mother and two friends to lie about his living arrangements. The court also posited (when denying Fievet's downward departure request) that Fievet's "gambling probably had far more to do with his theft and obstruction than anything else."

Based on these considerations, the court crafted Fievet's sentence:

When I look back at your record, Mr. Fievet, it's no surprise that you did this thing, this mistake as you call it, because as I've indicated, going back to your military record and also with the way in which you sustained your employment as a firefighter, lying and covering it up is what you've become quite comfortable doing, and that's a pity.

. . .

What I'm going to do with this suggestion that 10 months at the low end and 16 months at the high end is sufficient, is employ it, but in the following way. And to the extent this amounts to a variance, it is an upwards variance.

For Counts 1, 2, and 3 I hereby impose a concurrent term of incarceration of 16 months.

For Count 4, the obstruction of justice count, the icing on the cake, the thing that need not be done except for *you to continue the lies and deceits that you perpetuated for most of your life from the record that I see*, I hereby impose a consecutive term of incarceration of 12 months. When you add the two together, it's 28 months total.

The district court imposed a three-year term of supervised release concurrent on all four counts and ordered $47,556.20 in restitution jointly and severally with Gerolyn. Additionally, "[b]ecause of [Fievet's] penchant for gambling," the court ordered Fievet "not to engage in any form of gambling."

The court felt that this sentence "[would] allow Mr. Fievet to answer to the United States [and] . . . promotes respect for the law," as well as "deter [Fievet] and others who attempt to steal from the United States and then lie to cover it up."

On appeal, Fievet argues that his sentence is both procedurally and substantively unreasonable.

**II.**

Fievet contends that his sentence is (1) procedurally unreasonable because the district court did not properly detail the reasoning for the upward variance it imposed as required by 18 U.S.C. § 3553(c)(2) and failed to address his nonfrivolous arguments; and (2) substantively unreasonable because the court failed to adequately explain the variance, placed excessive weight on Fievet's gambling, and issued an arbitrary sentence.

Sentences must be both procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). We assess reasonableness under an abuse-of-discretion standard of review. *Id.* at 51. This is true for sentences both within and outside the Guidelines range**.** *Id.*

**A.**

**1.**

Procedural reasonableness is a "process-driven" requirement. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Here, Fievet claims that his sentence is procedurally unreasonable because the district court did not give a "specific reason" for the variance imposed. To be procedurally reasonable, the district court must adequately explain the reason for the variance. *Gall*, 552 U.S. at 51; *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011). An adequate explanation facilitates meaningful appellate review and promotes the perception of fair sentencing. *Gall*, 552 U.S. at 50; *see also United States v. Clayton*, 937 F.3d 630, 643 (6th Cir. 2019) (noting

that "[p]rocedural reasonableness simply requires that a district court sufficiently explain its reasoning to allow for reasonable appellate review"), *cert. denied*, 140 S. Ct. 669 (2019).

In the present case, the district court explained the reason for varying from the Guidelines. After properly calculating the Guidelines range and identifying which § 3553(a) factors it deemed most relevant, the court specifically referred to Fievet's record of "lying and covering it up," beginning with his military record and continuing with his employment as a firefighter living outside city limits, and remarked that Fievet had become "quite comfortable" with this pattern of deceitful behavior. Because of this, the court felt compelled to "manipulate [the sentence] a bit," which it expressly characterized as an "upwards variance." The court reiterated the specific reason for the variance—because of "the lies and deceits that [Fievet] perpetuated for most of [his] life from the record that I see." Because the court clearly identified the factors that it believed justified the upward variance, the sentence is procedurally reasonable.

The cases Fievet cites are distinguishable. In *United States v. Ferguson*, we held that a sentence was procedurally unreasonable because the district court "made only a generalized, nonspecific allusion to 'all of the facts and circumstances' of the case 'as well as his history and characteristics[,]'" and the only "'characteristics'" the court specifically identified were the defendant's relatively young age and sole role in his criminality. 518 F. App'x 458, 467 (6th Cir. 2013). "The conclusory reference to the defendant's 'history and characteristics' preclude[d] assessment by this court of whether the Judge in fact considered these categories." *Id.* Same thing in *United States v. Blackie*, where the district court sentenced the defendant "without indicating that the sentence was outside the Guidelines range or stating the court's specific reasons for the variance." 548 F.3d 395, 401 (6th Cir. 2008). In *United States v. Cousins*, "the district judge failed to provide his reasoning for the variance or to explain how the two months that he added to

the maximum Guidelines sentence were related to his stated goal of protecting the public[.]" 469 F.3d 572, 578 (6th Cir. 2006), *abrogated on other grounds, Irizarry v. United States*, 553 U.S. 708 (2008). And in *United States v. Jackson*, we vacated the sentence because the district court "did not include any references to the applicable Guidelines provisions" or an explanation for its downward variance. 408 F.3d 301, 305 (6th Cir. 2005). The differences between those cases and this one are obvious—the court here provided adequate explanation for both its variance and the ultimate sentence.

**2.**

Fievet further claims that his sentence is procedurally unsound because the district court failed to address his nonfrivolous arguments in support of a lower sentence. We have repeatedly held that "[w]hen a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (cleaned up) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)); *see also Ferguson*, 518 F. App'x at 466 (holding that the district court's failure to explain why it rejected two of the defendant's nonfrivolous arguments for a downward variance was procedural error).

**a.**

First, Fievet claims that the district court ignored his nonfrivolous arguments that he did not suffer large losses while gambling, that gambling is his hobby and not an addiction, and that he gambles legally. The district court did not ignore Fievet's argument, it rejected the argument by focusing on Fievet's continued gambling even after being advised during his plea hearing that he would be required to pay restitution to the SSA. The court explained: "It wasn't your money

to gamble. . . . And that you think whether you won or lost matters, it doesn't. You owe the United States . . . ."

**b.**

Second, Fievet complains of the court's inattentiveness to his request for a downward variance based on family ties and responsibilities pursuant to USSG §5H1.6. However, the record establishes that the district court considered Fievet's family ties argument: "I've looked at what the guidelines might suggest for family ties or any other reason suggested by the record before me for a departure. None come to Mr. Fievet's aid." Fievet nonetheless claims that this "dismissive acknowledgement is inadequate." Yet, as we observed in *Wallace*, "the crucial question is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them 'into account' in sentencing him." 597 F.3d at 804 (internal quotation marks omitted) (quoting *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008 ) (en banc)). Here, the district court indicated that it was aware of Fievet's argument but felt that the Guidelines and the record did not support a family ties downward departure. The district court properly considered Fievet's family ties and responsibilities argument, and the sentence was not procedurally unreasonable. *See id.* at 806 (vacating the sentence because the appeals court "simply c[ould not] tell whether the district court considered [the defendant's] primary argument for a lesser sentence").

**B.**

Substantive unreasonableness is an argument about the length of the sentence. *Rayyan*, 885 F.3d at 442. It is "a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id*. Weighing those factors "is a matter of reasoned discretion, not math, and our highly deferential review of a district court's

sentencing decisions reflects as much." *Id.* (citing *Gall*, 552 U.S. at 51). When a district court varies above or below the Guidelines, we "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) (quoting *Gall*, 552 U.S. at 50). A sentence outside the Guidelines range is neither presumptively reasonable nor unreasonable. *Gall*, 552 U.S. at 51. "[I]n those cases that fall outside the Guidelines' 'heartland,' the district court's decision to deviate from the advisory range is entitled to the 'greatest respect,' whereas a sentence that departs from the advisory range in a 'mine-run case' warrants 'closer review.'" *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)).

Fievet raises three arguments regarding the substance of his sentence.

**1.**

Fievet claims that his case falls within the "heartland" or "mine run" of average cases envisioned by the Guidelines. *See Kimbrough*, 552 at 109 (observing that "a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply'") (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). He asserts that his "social security theft was about as 'mine-run' as such a case could be." He notes the Guidelines already accounted for the fact that his crime was against the Government, the amount of loss, and the obstruction of justice. This is true. *See* USSG § 2B1.1(a)(2), (b)(1)(D); USSG § 3C1.1.

But Fievet glosses over several facts that were not encompassed in his advisory Guidelines range (i.e. did not increase his offense level or criminal history category) and removed his case from the mine run—the misrepresentation about his military service, his fraud upon the Cleveland

Fire Department, and his gambling in the face of a likely restitution order. The district court expressly relied on these factors in imposing an upward variance. We must ensure that the extent of the deviation is backed by sufficiently compelling justification. *Gall*, 552 U.S. at 50. The court reasonably viewed Fievet's attempt to have another person provide a false statement to the SSA to help him cover up his crime as the "icing on the cake" of his past misdeeds. As the court explained, it was the lifelong pattern of deceit and coverup that distinguished Fievet's crime from the ordinary social security theft case, taking his case out of the "heartland" and justifying the variance. This decision is entitled to deference. *See United States v. Lanning*, 633 F.3d 469, 476 (6th Cir. 2011) (quoting *Gall*, 552 U.S. at 51) (noting that an appeals court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.").

**2.**

Next, Fievet claims that the district court placed an excessive amount of weight on his continued gambling after he was advised that he owed $47,000 in restitution. Gambling was an important component of the district court's sentencing matrix to be sure, but as discussed above, the district court considered several factors in selecting the sentence. Indeed, the record clearly reflects that the court's overarching concern was "the lies and deceits that [Fievet] perpetrated for most of [his] life," and not simply his gambling.

**3.**

Last, Fievet contends that his sentence is arbitrary because of the cumulative effect of the district court's (1) failure to adequately address the § 3553(a) factors, (2) reliance on unsupported conclusions, and (3) failure to provide an adequate reason for the upward variance. *See id.* at 474 (stating that a sentence is substantively unreasonable if the district court selected the sentence arbitrarily). This argument is essentially a repurposing of Fievet's other procedural and

substantive arguments, which we have rejected. The only truly new argument is that the district court relied on an unsupported assumption that Fievet's gambling was for the crimes at issue.[3] However, Fievet himself acknowledged that he gambles on a daily basis and provided the records to prove it. So the district court's "assumption" about the role of Fievet's gambling in the charged conduct was not unfounded.

In sum, Fievet's sentence is substantively reasonable because the court tied its sentence to identifiable factors, providing a sufficiently compelling justification for the 12-month variance. That decision is entitled to great deference. *See Gall*, 552 U.S. at 51.

**III.**

Because we find that Fievet's sentence is both procedurally and substantively reasonable, we **AFFIRM** the judgment of the District Court.

---

[3] This is actually a procedural reasonableness argument. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (holding that a claim that the district court reached a conclusion "without basis in fact" "is simply another way of saying that the district court 'select[ed] a sentence based on clearly erroneous facts.'") (quoting *Gall*, 552 U.S. at 51), *cert. denied*, 140 S. Ct. 44 (2019).