NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0445n.06

Case No. 25-3033

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 01, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
|     Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
|  | ) |  |
| LARRY ELLINGTON, | ) |  |
|     Defendant - Appellant. | ) | O P I N I O N |
|  | ) |  |
|  | ) |  |

Before: GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

**McKEAGUE, Circuit Judge.** Larry Ellington pled guilty to one count of Felon in Possession of a Firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The Sentencing Guidelines recommended a sentence between 27 and 33 months. After two hearings, the district court sentenced Ellington to 40 months of imprisonment, a 7-month upward variance.

On appeal, Ellington claims his sentence is substantively unreasonable, arguing that the district court did not provide a sufficiently compelling justification for the upward variance. We disagree and **AFFIRM**.

**I.**

**A.**

On May 31, 2024, while monitoring a high-crime area of Cleveland, Ohio, law enforcement officers saw Ellington approach a liquor store with a firearm in his waistband. After Ellington concealed the firearm with his shirt, he went inside, bypassing the visible "no firearms" signage.

When Ellington exited the store, the law enforcement officers confronted him, seizing the Walther PPQ .45 caliber pistol in his possession, which was loaded with 11 rounds of ammunition. The officers then informed Ellington of his *Miranda* rights and began questioning him about the firearm, which Ellington acknowledged he was not allowed to possess. Once the officers had Ellington's information, he was released.

Ellington was indicted on one count of Felon in Possession of a Firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(8), to which he pled guilty. Because Ellington lived in Las Vegas, Nevada, officials in the Northern District of Ohio partnered with Nevada-based probation officers to monitor his compliance with pretrial bond conditions.

**B.**

At the initial sentencing hearing, the district court discussed the 18 U.S.C. § 3553(a) sentencing factors, noting Ellington's upbringing, his current familial situation, and his medical, employment, and criminal histories. As articulated in the record, despite mitigating factors from Ellington's "adverse childhood," the district court considered Ellington a danger to the community. Jan. 7, 2025 Sentencing Hr'g Tr., R.27 at PageID 152, 154. In particular, the district court was "deeply troubled" by the presentence report, citing paragraphs that described Ellington's resistance to pretrial home inspections and the underlying facts of his prior convictions. *Id.* at PageID 151, 154.

As discussed at the hearing, the presentence report detailed Ellington's interactions with the Nevada-based probation officers who were conducting his pretrial home inspections. According to the presentence report, Ellington was trying to dictate the terms of these inspections, telling the officers that they could only come to his residence between 8:00 AM and 1:00 PM. The presentence report also stated that Ellington "wouldn't allow" the officers to show up unannounced. PSR, R.16 at PageID 93-94.

Even though the district court considered an upward variance, it sentenced Ellington to 33 months of imprisonment, the top of the 27- to 33-month Guidelines range. In explaining its rationale, the district court referenced Ellington's interactions with the Nevada probation officers, indicating that Ellington was dangerous and lacked respect for the law. Jan. 7, 2025 Sentencing Hr'g Tr., R.27 at PageID 140, 154-56.

Ellington objected to the sentence. Specifically, he challenged the presentence report's characterization of his interactions with the probation officers in Nevada, arguing that he was not defiant and did not attempt to control the timing or nature of their inspections. To ensure Ellington's concerns were addressed, the district court withdrew the sentence and scheduled a subsequent hearing to receive testimony from the officers with whom Ellington interacted during his pretrial supervision.

The following week, at the continued sentencing hearing, the Nevada probation officers testified about their experiences with Ellington. Briana Casey (a probation officer who inspected Ellington's residence) corroborated the information in the presentence report, affirming Ellington's attempts to dictate the terms and scheduling of his supervision. Then, Shiloh Badaway (Ellington's pretrial supervisor) testified, providing additional details about Ellington's resistance to pretrial inspections.

But Badaway's testimony was not limited to Ellington's mere resistance to probation officers; she also informed the district court that Ellington failed to comply with some of his pretrial conditions. Ellington was supposed to call the pretrial services department "every single day" to inquire as to whether he needed to submit to a drug test. Jan. 14, 2025 Sentencing Hr'g Tr., R.31 at PageID 205-06. Badaway clearly communicated this requirement to Ellington, but for most of his pretrial supervision, Ellington only called in sporadically. *Id.* at PageID 208, 210. After "a lot of encouragement," towards the end of his supervision term, Ellington finally began to satisfy his daily call requirement with pretrial services. *Id.* at PageID 205, 210. Additionally, Badaway mentioned that Ellington was a "no show" for some of his scheduled drug tests and "a

stall" for others.[1] *Id.* at PageID 206, 211. Ellington's lack of compliance with these pretrial requirements, as detailed in Badaway's testimony, was not discussed at the initial sentencing hearing nor was it referenced in the presentence report.

Citing the officers' testimony, the district court sentenced Ellington to 40 months of imprisonment, a 7-month upward variance from the previously imposed sentence and the Guidelines recommendation. Ellington appealed, challenging only the substantive reasonableness of his sentence; he does not raise a procedural reasonableness challenge.[2]

## II.

"For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of [18 U.S.C.] § 3553(a)." *United States v. Gates*, 48 F.4th 463, 476-77 (6th Cir. 2022) (quoting *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008)). When a defendant challenges the substantive reasonableness of his sentence, he is "claim[ing] that [the] sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). "It's a complaint

---

[1] In this context, a "stall" refers to when an individual fails to provide a sample at a scheduled drug test.

[2] A sentence is "procedurally unreasonable 'if the district court fail[ed] to calculate (or improperly calculate[d]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Gates*, 48 F.4th 463, 473 (6th Cir. 2022) (quoting *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018)). Ellington does not challenge the district court's Guidelines calculation, and he does not suggest that the district court failed to consider any of the § 3553(a) factors. Nor does he argue that this sentence was based on clearly erroneous facts. And while Ellington claims that the district court did not sufficiently justify the variance, he challenges the substance, not the procedure. Procedural reasonableness concerns the existence of an explanation that "provide[s] [the] specific reasons for an upward departure or variance." *Nichols*, 897 F.3d at 738 (quoting *United States v. Blackie*, 548 F.3d 395, 401-02 (6th Cir. 2008)). Ellington recognizes that the district court explained why it imposed an upward variance; Ellington merely disagrees with the reasoning. Thus, as expressed in his brief, Ellington only challenges the substantive reasonableness of his sentence—he suggests the upward variance was "based upon an unreasonable amount of weight to what the district court perceived as a lack of respect to officers," Appellant Br. 17, D.22., not that the district court provided "no independent explanation for the corrected sentence." *Nichols*, 897 F.3d at 738 (explaining a procedural fault in a district court's sentence). We proceed accordingly.

that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id.* Because sentencing "is a matter of reasoned discretion, not math," we apply a "highly deferential" standard of review. *Id.* "We may reverse only if we find that the court abused its significant discretion." *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019) (citing *United States v. Lanning*, 633 F.3d 469, 473-76 (6th Cir. 2011)).

"The substantive-reasonableness standard recognizes that district-court judges can vary from the Guidelines range. But the discretion to vary from the Guidelines requires the district court to justify the variance." *United States v. Demma*, 948 F.3d 722, 728 (6th Cir. 2020). "A sentencing explanation is adequate if it allows for meaningful appellate review . . . ." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 50 (2007)). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

"[A]lthough this court's presumption of reasonableness applies only to sentences inside of the Guidelines range, there is no presumption against a sentence that falls outside of the range." *Lanning*, 633 F.3d at 473 (quoting *United States v. Tate*, 516, F.3d 459, 469-70 (6th Cir. 2008)).

## A.

Ellington asserts that the district court did not sufficiently justify the upward variance. He argues that the district court relied on the same information (the presentence report and the corroborating testimony) to reach two different sentences, first imposing 33 months of imprisonment, then 40 months.[3] According to Ellington, the upward variance was the product of

---

[3] Based on this premise, Ellington cautions that if district courts increase sentences after *Bostic* objections, "rel[ying] on conduct which it had before it at the first sentencing to vary upward at the second sentencing," it would have a "potential chilling effect" that "discourage[s] defendants from preserving appellate rights." Appellant Br. 16-17, D.22. However, as explained below, Ellington's concern is misguided. The district court relied on new information elicited from testimony at the continued hearing. And when a defendant

"an unreasonable amount of weight to what the district court perceived as a lack of respect to officers." Appellant Br. 17, D.22. In support of this proposition, Ellington quotes the district court, speaking to Ellington at sentencing:

> [Y]ou have a real problem with understanding what is expected of you. Period. You're not running the show. You're not running this courtroom, and you're not running these probation officers like you attempted to do. So you understand that. . . . You are going to prison for more than 33 months because of that.

*Id.* (quoting Jan. 14, 2025 Sentencing Hr'g Tr., R.31 at PageID 222).

As the quote suggests, Ellington's resistance to the Nevada probation officers certainly contributed to the upward variance; but it was only part of the equation. The quote Ellington cherry-picks for his appellate argument ignores the district court's emphasis on Badaway's testimony, which revealed Ellington's failure to comply with his daily call requirement and his "no show" for drug testing—new information that the district court was not privy to when it imposed the original 33-month sentence.

True, after considering the 7-month upward variance at the initial sentencing hearing, the district court settled on a top-of-the-Guidelines 33-month sentence to account for Ellington's attempts to dictate the terms of his supervision, which displayed a lack of respect for the law and his danger to the community. Jan. 7, 2025 Sentencing Hr'g Tr., R.27 at PageID 154-56 ("I will decline to vary upward against perhaps my better judgment."). But at the continued sentencing hearing, the district court determined that the testimony outlining Ellington's noncompliance with his pretrial conditions tipped the scale, providing new evidence that suggested Ellington needed a more severe sentence. Jan. 14, 2025 Sentencing Hr'g Tr., R.31 at PageID 224, 232-33.

---

seeks to enter additional context or information into the record, he must recognize that such information will impact the sentence. Restricting the consideration of prejudicial information entered into the record post-*Bostic* objection would conflict with federal law and improperly hinder district courts' pursuit of the ultimate goal: imposing an appropriate sentence. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

The district court explained that the decision to sentence Ellington to 40 months of imprisonment was not solely due to his lack of respect for the officers. In fact, the district court clearly articulated that the new information in Badaway's testimony was a significant basis for the upward variance:

> Probation has recommended an upward variance . . . to 40 months, and I will give the parties notice *based upon testimony I've heard here today*, I will also contemplate an upward variance. *The testimony has been very enlightening as it relates to the defendant's time while on supervision and his noncompliance with the conditions of pretrial* as we've heard here today by way of testimony.

Jan. 14, 2025 Sentencing Hr'g Tr., R.31 at PageID 213 (emphasis added). The district court later reemphasized:

> [W]hen you are released on pretrial, you are to follow the rules completely, not part of them, not some of them, *not call when you want to call, not show up when you want to show up*. No. You follow the rules. Pretrial is in some ways—when you are on bond is someways an indication of whether or not you are a good candidate for anything other than a trip to the Bureau of Prisons, and you have failed miserably in that respect. Period.

*Id.* at PageID 224 (emphasis added). And once again reiterated while finalizing the sentence:

> [P]robation has recommended an upward variance from the guidelines because of the fact that this occurred less than two years [after Ellington's previous supervised release term concluded]. *In addition to that argument, it's clear from the testimony I've heard here today the defendant was not fully compliant with conditions of pretrial supervision.* Additionally, I would say that, again, his conduct while on supervision and while being investigated by—being required to comply with conditions related to the preparation of a PSI gives me great pause as to whether or not he can be supervised in the community.

*Id.* at PageID 232 (emphasis added).

The record does not support Ellington's characterization of the district court's basis for the upward variance. The district court's decision to impose an upward variance at the continued sentencing hearing was not, as Ellington posits, based on the same information available at the initial sentencing hearing. It was, at least in part, based on the new information from Badaway's

testimony detailing Ellington's failure to comply with pretrial conditions, which compounded the district court's previous concerns and led to an upward variance.

**B.**

Having established that the district court based the upward variance, at least in part, on the new information detailing Ellington's failure to comply with his pretrial conditions, we next evaluate whether the district court sufficiently justified this departure from the Guidelines. "[O]ur highly deferential review of a district court's sentencing decisions" applies even when the sentence reflects an upward variance. *Rayyan*, 885 F.3d at 442; *see also Thomas*, 933 F.3d at 613 ("[Defendants] still must surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance."). As discussed above, in a substantive reasonableness review, we must ensure that the district court did not "place[] too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Rayyan*, 885 F.3d at 442.

Ellington suggests his offense constitutes a "mine-run case," so an upward variance warrants close review. *United States v. Perez-Rodriguez*, 960 F.3d 748, 755 (6th Cir. 2020) ("Because the district court varied upward in a mine-run case, we give the sentence a closer review."). This close review examines the district court's reasoning and the "extent of the deviation" from the Guidelines to "make sure that 'the justification is sufficiently compelling to support the degree of variance.'" *Id.* (quoting *Gall*, 552 U.S. at 50). "The greater the variance, the more compelling the justification must be." *Id.* at 754.

Here, even under a close review, the district court sufficiently justified the 7-month (or 21.21%) upward variance; Ellington's sentence was substantively reasonable.

The district court articulated section 3553(a) factors as it considered them, primarily focusing on Ellington's history and characteristics (i.e., lack of compliance with pretrial conditions and his resistance to the probation officers' visits) and the need to impose a sentence that deterred future harmful conduct. But the district court also attached considerable weight to the

circumstances of the offense and the kinds of sentences available. Jan. 14, 2025 Sentencing Hr'g Tr., R.31 at PageID 224, 232 (noting Ellington's offense came only two years after he completed his previous supervised release term, and explaining that Ellington was not "a good candidate for anything other than a trip to the Bureau of Prisons").

While these considerations led the district court to impose an upward variance, the district court did not ignore the other factors. The district court also analyzed potential sentencing disparities, recognizing that when defendants with similar criminal histories committed comparable offenses, "the average length of sentence imposed was 24 months" and "[t]he median was 27 months." *Id.* at PageID 232-33; *see also* Jan. 7, 2025 Sentencing Hr'g Tr., R.27 at PageID 152 (calculating the same average and median). However, the district court considered this range "woefully inadequate." Jan. 14, 2025 Sentencing Hr'g Tr., R.31 at PageID 232-33. The record also illustrates that the district court weighed the mitigating factors from Ellington's "adverse childhood" and his employment history. *Id.* at PageID 231. Nevertheless, the district court determined that a 40-month sentence was appropriate and necessary, and the mitigating factors did not outweigh Ellington's "deeply troubling" criminal history and his failure to comply with pretrial conditions. *Id.* at 229, 232-33. In doing so, the district court sought a sentence that would promote respect for the law, deter future criminal conduct, and protect the public, reflecting a consideration of the pertinent section 3553(a) factors.

Even though some factors proved to weigh heavier on the scale, prioritizing certain factors is necessary as district courts make an individualized assessment of the defendant's circumstances to find the proper sentence. *See United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007) ("Not all [§ 3553(a) factors] are important in every sentencing; often one or two prevail, while others pale."); *see also United States v. Zobel*, 696 F.3d 558, 571 (6th Cir. 2012) ("[A] district court does not commit reversible error simply by 'attaching great weight' to a single factor." (quoting *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir. 2011) (cleaned up)). Ellington may not have liked the result, but a defendant's displeasure with the district court's decision does

not inherently imply there was an abuse of discretion. Even with a close review, the record satisfies the deferential standard.

"Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." *Rita*, 551 U.S. at 357. "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Id.* "Where a matter is . . . conceptually simple[,] . . . and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Id.* at 359.

In this case, the district court explained the rationale for the upward variance: Ellington's failure to comply with pretrial conditions, his attempts to dictate the circumstances of his supervisory inspections, his documented pattern of continued unlawful conduct, his inability to handle supervision outside the Bureau of Prisons, and the danger he poses to the community. Our circuit has upheld similar upward variances when a defendant "demonstrates that he has little respect for the law and has not been adequately deterred from engaging in unlawful activities." *United States v. Matheny*, 450 F.3d 633, 641 (6th Cir. 2006) (6-month upward variance "was not an unreasonable way to ensure that [the defendant] understood that his recidivism is not acceptable"); *see also United States v. Melchor*, 515 F. App'x 444, 447 (6th Cir. 2013) ("[T]his Court has not hesitated to affirm reasonable upward variances based on potential for recidivism . . . ."). We see no reason to deviate from this precedent; the district court's valid, documented concerns about Ellington sufficiently justified the reasonable 7-month upward variance.

The district court's explanation allowed for meaningful appellate review and demonstrated a consideration of the relevant evidence and arguments. The record sufficiently indicates that the district court did not "select[] the sentence arbitrarily, bas[e] the sentence on impermissible factors, fail[] to consider pertinent § 3553(a) factors[,] or giv[e] an unreasonable amount of weight to any

pertinent factor," so the sentence is substantively reasonable. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008) (quoting *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006)).

## III.

For these reasons, we **AFFIRM** the district court's sentence.